UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Edward LOUDERMAN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jacquelyn Mary LOUDERMAN, aka Jackie Williams, Defendant-Appellant.

Nos. 77–1129, 77–1128.

United States Court of Appeals, Ninth Circuit.

June 16, 1978.

[*] Of the District of Arizona.

Ron Rain, Jo Ann S. Curtis, Los Angeles, Cal., for defendant-appellant.

Paul J. Brysh, Washington, D. C., for plaintiff-appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and EAST, Senior District Judge.*

EAST, Senior District Judge:

*The Appeal*

The appellant Charles Louderman appeals from his judgment of conviction and suspended sentence under probation entered by the District Court on January 10, 1977 for violating 18 U.S.C. § 1343 (wire fraud).[1] The appellant Jacquelyn Louderman appeals from her judgment of conviction and sentence to custody followed by probation entered by the District Court on the same date for violating 18 U.S.C. § 1343

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 1343 provides:
"Fraud by wire, . . .
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate . . . commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined . . . or imprisoned . . . ."

(wire fraud), 18 U.S.C. § 2 (aiding and abetting), and 18 U.S.C. § 912 (impersonating an officer or employee of the United States). Each of the mentioned judgments of conviction and sentence was based upon jury verdicts of guilty. The appellant Jacquelyn Louderman is at liberty on bail pending appeal.

We note jurisdiction and affirm each of the judgments of conviction and sentence.

## Facts

The appellants operated a Los Angeles based corporation called "Sources Unlimited" which engaged in "skip-tracing"; *i. e.,* the process of locating debtors who have "skipped-out" on unpaid bills. Its customers included major corporations, banks and, in one instance, the Los Angeles Police Department. In an attempt to locate a particular individual, Sources Unlimited would call telephone company offices and/or United States post office branches, representing themselves as telephone or postal employees, and request confidential internal information concerning telephone customers or post office box holders.

In August, 1972, Pacific Telephone & Telegraph Co. began investigating Sources Unlimited, and in April, 1975, connected a pen register to record the numbers dialed from two telephones used by Sources Unlimited. Eventually the telephone company began to check certain of the numbers called by calling the numbers themselves to inquire about the substance of the conversations. Testimony indicated that the calls were placed by Sources Unlimited to various telephone company business offices and post office branches across the country in an attempt to gain confidential internal information.

In January, 1973, the FBI began investigating Charles Louderman for suspected bookmaking activity, and in 1974, in the course of its investigation, learned of the telephone company's independent investigation of Sources Unlimited. The two investigating officers kept in contact, and in December, 1974 and January, 1975, the FBI subpoenaed the toll call records of Sources Unlimited. The FBI was informed of the pen register on May 12, 1975, one week after its installation by the telephone company. On June 3, 1975, the FBI was advised that the telephone company had evidence of wire fraud, and on the same day, subpoenaed the results of the pen register. Ten days later, the FBI obtained a search warrant for the seizure of certain telephones, materials containing telephone numbers of company business offices, confidential internal company telephone numbers, materials pertaining to procedures used to obtain such confidential information, and materials pertaining to the efforts of Sources Unlimited to obtain confidential telephone company information about certain individuals. In the course of the search, similar records concerning other individuals were discovered, so a second warrant authorizing seizure of all such records was obtained. Charles Louderman's motion to suppress was denied.

## Issues on Review

We consider the dispositive issues to be:

1. Whether obtaining confidential information from telephone companies and the United States post office by means of misrepresentation constitutes wire fraud;

2. Whether 18 U.S.C. § 1343 is unconstitutionally vague;

3. Whether use of a pen register in this case by the telephone company is subject to the Fourth Amendment; and

4. Whether the search warrant was invalid either as a general warrant or because it was not based on probable cause.

## Discussion

*Issue 1.* Appellants initially contend that obtaining confidential information from the telephone company and United States post office by misrepresentations is not a "scheme or artifice to defraud" within the meaning of 18 U.S.C. § 1343.[2] While admit-

---

**2.** Jacquelyn Louderman points out, but does not pursue further, that although the statute is phrased in the disjunctive, the indictment is phrased in the conjunctive. It appears that

ting the use of false pretenses, they contend that the relevant question must be whether any "property" was obtained by false pretenses. They note that the crime of false pretenses, as defined by state law, applies only to tangible property, or that which is the subject of larceny, while the information sought by them here, in contrast, is not susceptible to a "taking and asportation" because it does not have tangible characteristics. Additionally, appellants maintain that the sole purpose for their false representations was to carry out a legitimate business enterprise of tracking down debtors. We reject the argument.

▆▆▆ It is well established that:

"[I]n a prosecution under 18 U.S.C. § 1343, i. e., use of interstate communications to further a preconceived scheme to defraud, the prosecution need not prove that the scheme was successful or that the intended victim suffered a loss or that the defendant secured a gain. The gist of the offense is a scheme to defraud and the use of interstate communications to further that scheme." *United States v. O'Malley,* 535 F.2d 589, 592 (10th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976). (Citations omitted).

Furthermore, state law is irrelevant in determining whether a certain course of conduct is violative of the wire fraud statute. *United States v. Scallion,* 533 F.2d 903, 910 (5th Cir. 1976), *cert. denied,* 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977).

The District Court instructed the jury that it should find appellants guilty if it determined that there was either "a scheme or artifice to 'defraud' or 'a scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretense.'" The Court also instructed the jury regarding the term "property" and stated that it encompasses "confidential and nonpublic commercial information such as customer lists, customer credit data, lists of services provided customers, and accounting data, as well as services of employees and customers goodwill."

Admittedly, in most wire fraud cases, the scheme to defraud has been an underlying scheme to obtain tangible property which is furthered by the use of wire communications, as for example, defrauding victims of various sums of money or the use of a "blue-box" in a scheme to defraud a telephone company of money due for long distance calls. The object of the scheme to defraud here was, in contrast, to obtain intangible, commercial information which the telephone company and post office chose to keep confidential and which its customers expected would remain confidential. There was a loss to the subscribers of their right to privacy, and telephone subscribers and post office box holders were being deprived of part of the service for which they were paying.

For guidance in construing the scope and reach of § 1343, we look to the mail fraud statute, 18 U.S.C. § 1341.[3] This section:

this point was not raised below and, therefore, cannot be considered for the first time on appeal. *United States v. Celestine,* 510 F.2d 457, 460–61 (9th Cir. 1975). Further, the contention urged is meritless. *See, e. g., United States v. O'Looney,* 544 F.2d 385 (9th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976).

3. Unfortunately, the legislative history of 18 U.S.C. § 1343 is sparse. Section 1343 is, however, included within the mail fraud chapter and does appear to be patterned after 18 U.S.C. § 1341, and although § 1341 and § 1343 differ as to the elements necessary to trigger federal jurisdiction, they share identical language in providing that those who act "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by

means of false or fraudulent pretenses, representations, or promises . . . shall be fined . . . or imprisoned . . . ." As the Supreme Court stated in *Northcross v. Memphis Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973), in comparing provisions for attorney's fees in two different federal statutes, "[t]he similarity of language . . . is, of course, a strong indication that the two statutes should be interpreted *pari passu.* Moreover, 'the two provisions share a common *raison d'etre.'*" The Court of Appeals for the Eighth Circuit has also reached the conclusion that §§ 1341 and 1343 are *in pari materia. United States v. Donahue,* 539 F.2d 1131, 1135 (8th Cir. 1976). See also *United States v. Calvert,* 523 F.2d 895, 903 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

" . . . makes unlawful the use of the mails in execution of 'any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.' 18 U.S.C. § 1341 (emphasis added). A logical interpretation of that language is that Congress, by expressly limiting the second clause to money or property, did not limit 'any scheme or artifice to defraud' to those which contemplated the gaining of money or property, and courts have so construed it." *United States v. Mandel,* 415 F.Supp. 997, 1010 (D.Md. 1976). (Citations omitted).

█ The predecessor of the present § 1341, containing similar language and proscribing "any scheme or artifice to defraud," was first interpreted in *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896), and the Supreme Court ruled that the statute was not to be limited to the common law definition of false pretenses. *See United States v. McNeive,* 536 F.2d 1245, 1247 (8th Cir. 1976). Several schemes involving intangible rights have been successfully prosecuted under the "scheme to defraud" clause of § 1341. Illustrative of these are cases involving vote fraud (*United States v. States,* 488 F.2d 761 (8th Cir. 1973), *cert. denied,* 417 U.S. 909 and 950, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974)), and cases involving the faithful services-breach of fiduciary duty rationale (*United States v. Isaacs,* 493 F.2d 1124 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), where a state governor involved in an illegal kickback scheme was held to have deprived citizens of their right to his "honest and faithful services.") As such, "[t]he statute includes a broad proscription of behavior for the purpose of protecting society." *United States v. Keane,* 522 F.2d 534, 544 (7th Cir. 1975), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976).

█ In determining the character of a particular representation:

"A jury may find a representation to be false or fraudulent if it finds that the representation was known to be untrue when made . . . and made or caused to be made with the intent to deceive. . . . A representation is deceptive if the reasonably probable effect of the representation would be to deceive or mislead a person of ordinary prudence." *Mandel,* 415 F.Supp. at 1006. (Citations omitted).

We are mindful that while we are to be guided by non-technical standards, *id.* at 1007, the statute should be carefully and strictly construed in order to avoid extension beyond the limits intended by Congress. *United States v. Kelem,* 416 F.2d 346 (9th Cir. 1969), *cert. denied,* 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1970); and *McNeive.*

█ We conclude and hold under the foregoing analysis that the acts and conduct of the appellants constitute a prosecutable scheme to defraud within the tenor of § 1343. We further conclude that the District Court's instructions to the jury were correct.

██ *Issue 2.* Appellants contend the statute is unconstitutionally vague in that it did not give reasonable notice that their methods of operation were prohibited. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). (Citation omitted). The test for determining if a statute is unconstitutionally vague is whether a person "of average intelligence" would have " 'reasonably [understood] that his contemplated conduct is proscribed'." *Id.* at 553, 95 S.Ct. at 716. (Citation omitted). Given the nature of the scheme described above, we conclude that the appellants were on notice that a reasonably ascertainable standard of conduct was proscribed and that the statute was sufficient to advise the appellants that their conduct constituted wire fraud. (*See United States v. Powell,* 423 U.S. 87, 92–94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)).

■ *Issue 3.* Charles Louderman contends the use of a pen register by the telephone company is subject to Fourth Amendment protections. The recent case of *Hodge v. Mountain States Tel. & Tel. Co.,* 555 F.2d 254, 256–57 (9th Cir. 1977), resolved this question against the appellant in this Circuit, with the holding that information recorded by pen registers (a listing of telephone numbers dialed) in the investigation of a crime related to the delivery of telephone service is not entitled to such protection. See also Judge Hufstedler's concurring opinion at 265–67.

Furthermore, the requisite state action is lacking. Although the FBI was aware of the telephone company investigation, it did not approve it, did not offer advice, and had no specific information regarding the methods employed by the telephone company. There is no evidence that the telephone company was conducting its investigation for any reason other than to put a stop to Sources Unlimited's obtaining confidential information from its employees. (*See Hodge,* 555 F.2d at 256 n.3).

*Issue 4.* Charles Louderman moved to suppress the evidence obtained in the search alleging that it was the tainted fruit of the pen register investigation, that the description of the items to be seized was too general, and that the reliability of the two informants was not sufficiently established in the affidavits for the warrants. Having previously held that use of the pen register did not violate appellant's Fourth Amendment rights, we move on to discuss the affidavits and the warrants.

■ We are satisfied that the affidavits sufficiently established the reliability of the two informants under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Each informants' reliability was adequately demonstrated in that each had supplied reliable information in the past leading to numerous arrests and the information supplied here was corroborated through various means of independent investigation. Names of the informants were withheld due to fear for their safety should their identity be disclosed.

"General warrants, of course, are prohibited by the Fourth Amendment. '[T]he problem [posed by the general warrant] is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings . . . . [The Fourth Amendment addresses the problem] by requiring a "particular description" of the things to be seized.' *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This requirement " 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965), quoting *Marron v. United States,* 275 U.S. [192] at 196, 48 S.Ct. 74 [72 L.Ed. 231]." *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

■ Contrary to appellant's assertions, the warrants were not general. The first directed the seizure of, *inter alia,* documents and records pertaining to the efforts of Sources Unlimited to obtain confidential information from the telephone company, including that related to specific individuals about whom Sources Unlimited was known to have made inquiries. The second warrant authorized seizure of similar information except that it was not limited to specific individuals.

■ *Meritless Claims.* Appellants raise various oblique evidentiary and procedural claims.[4] First, Charles Louderman claims that a document evidencing telephone company policy regarding the confidentiality of

---

4. Charles Louderman's due process claims which he asserts without discussion are frivolous.

the information sought by Sources Unlimited was unduly prejudicial and amounted to an inadmissible legal conclusion. We disagree. The Court instructed the jury that the evidence was being admitted for the "limited purpose of whatever probative value, if any, it has to develop the policy of the [telephone company] in the area that this witness has been testifying." Appellant made no timely objection to that instruction. The exhibits were properly admitted for the purpose of showing that the information sought by the appellants was confidential.

 Secondly, Charles Louderman complains of the introduction into evidence of a statement made by his wife, Jacquelyn, that she knew her activities were illegal. He asserts that he was prejudiced by the statement in that the jury would be likely to conclude that his wife would have mentioned her belief to him. The evidence was admitted against Jacquelyn Louderman only to show her intent, and the District Court instructed the jury to consider the evidence only as against Jacquelyn Louderman. There was no error.

 Charles Louderman next claims that the Court erred in refusing to instruct the jury that a mistake of law was a complete defense. As we stated in *United States v. Kaplan,* 554 F.2d 958, 968 (9th Cir. 1977), *cert. denied, Vogt v. U. S.,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315, *Stradley v. U. S.,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977):

> "While it is clear that the trial judge must instruct the jury as to the defendant's theory of the case, the instructions given need not be in the precise language requested by the defendant. . . . The refusal to give a requested instruction is not error 'if the charge as a whole adequately covers the theory of the defense.' . . . Thus, the adequacy of the jury instructions is 'not be determined by the giving, or failure to give, any one or more instructions,' but by examining the instructions as a whole." (Citations omitted). .

Appellant was allowed to introduce evidence that he acted on advice of counsel and such evidence was relevant to show his good faith belief that his conduct was legal. Here, although the instruction was not in the form of his requested instruction, it nevertheless apprised the jury that willfulness requires "specific intent to do something the law forbids; that is to say, with a purpose either to disobey or to disregard the law." The District Court's instruction as a whole was fair.

 Charles Louderman notes that on the first day of trial, he moved for a one week continuance to enable him to examine a notebook containing information from the telephone company's investigation and Jencks Act (18 U.S.C. § 3500) material pertaining to testimony of Government witnesses. He argues that by refusing to grant the continuance, the Court denied him time to prepare an adequate cross-examination, thereby denying his right of confrontation. We reject the argument. Defense counsel was not entitled to the notebook under the limited criminal procedure discovery rules (Fed.R.Crim.P. 16), and Jencks Act material is available only after the witness has testified. These materials were made available to counsel the day before trial as a courtesy to enable him to locate materials throughout the trial. While it was within the District Court's discretion to grant a continuance, it cannot be said that its refusal to do so amounted to an abuse of its discretion. *Cerda v. United States,* 391 F.2d 219, 220 (9th Cir.), *cert. denied,* 393 U.S. 872, 89 S.Ct. 163, 21 L.Ed.2d 142 (1968); *United States v. Williams,* 536 F.2d 1202, 1204–1205 (7th Cir. 1976).

 Lastly, Jacquelyn Louderman challenges the sufficiency of the evidence on the counts charging her with impersonation of a postal employee. We conclude, viewing the evidence in the light most favorable to the Government, that there was sufficient evidence upon which the jury could have based its verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86

L.Ed. 680 (1942), and *United States v. Fi-gueroa-Paz,* 468 F.2d 1055, 1058 (9th Cir. 1972). It is the function of the jury to weigh the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. *United States v. Ramirez-Rodriquez,* 552 F.2d 883 (9th Cir. 1977), and *United States v. Nelson,* 419 F.2d 1237 (9th Cir. 1969).

The several judgments of conviction and sentences are each affirmed.

AFFIRMED.