UNITED STATES of America,
Plaintiff-Appellant,

v.

Jerry R. BOHONUS, Defendant-Appellee.

No. 79–1449.

United States Court of Appeals,
Ninth Circuit.

March 27, 1980.

Dale A. Danneman, Asst. U. S. Atty., Phoenix, Ariz., for the U. S.

David M. Ochoa, Asst. Federal Public Defender, Phoenix, Ariz., for Jerry Bohonus.

Before TRASK, TANG and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

The government appeals the dismissal of an indictment against the defendant Jerry R. Bohonus on 12 counts of mail fraud in violation of 18 U.S.C. § 1341.[1]

---

1. 18 U.S.C. § 1341 states, *inter alia*:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . for the purpose of executing such scheme or

The district court dismissed the indictment on the ground that § 1341, as applied to the defendant, was unconstitutionally vague. The court also held that the indictment did not allege facts constituting a violation of the mail fraud statute because Congress did not intend that statute to reach employee disloyalty. We reverse and remand for further proceedings.

## I. *Facts.*

The pertinent facts as set forth in the indictment[2] are as follows:

The defendant was employed as an insurance manager by Amerco, a Nevada corporation. U–Haul International was and is a division of Amerco. The defendant was president and a member of the Board of Directors of four Amerco subsidiaries, all of which were insurance companies, and he was the insurance manager for Amerco and for U–Haul.

In January, 1971, Amerco entered into a contract with American Bankers Insurance Company of Florida (hereinafter "American Bankers"). American Bankers was to provide insurance coverage on a retention basis for lessees of U–Haul under what was denominated the "Safemove Program." Mr. Herbert Sieber, an insurance broker, negotiated the Safemove contract and was paid a commission pursuant to a Special Representative Agreement between American Bankers and himself for the insurance premiums paid as a result of the program. In or about March, 1972, Bohonus learned of the extent of the commissions paid to Sieber. Thereafter, the defendant pressured Sieber by threatening to cancel the Safemove Program unless Sieber paid him a share of the commissions Sieber was receiving from American Bankers.

Bohonus sent a letter to American Bankers dated June 5, 1972, cancelling the Safemove Program. Sieber contacted the defendant upon notice of the letter, and the defendant explained that the letter was a "bluff." Sieber then agreed to meet the defendant in Los Angeles to discuss a kickback plan. The two did meet in Los Angeles, and Sieber agreed to pay the defendant a portion of the commissions he was receiving from American Bankers. The defendant then sent a second letter to American Bankers, dated June 20, 1972, rescinding his cancellation of the Safemove Program. From June, 1972, to June, 1973, Sieber sent Bohonus portions of the commissions on the Safemove Program received from American Bankers.

In June, 1972, the defendant, on behalf of Amerco, sought an insurance company to handle liability insurance (a separate insurance program from the Safemove Program) for U–Haul. Sieber referred the defendant to Anthony Hepp, an insurance consultant, and Hepp arranged a contract between Amerco and the Old Republic Insurance Company. Hepp gave Sieber two-thirds of the commission Hepp received under this contract. Sieber in turn mailed the defendant one-half of these payments from April, 1973 to June, 1975.

Sieber mailed the payments relating to both insurance contracts to a post office box in Phoenix, Arizona. He made the checks payable to Inbroke, a corporation controlled by the defendant.

---

artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**2.** For purposes of reviewing this dismissal, we assume, as we must, that all of the allegations of the indictment are true. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332, 96 L.Ed. 367 (1952), *United States v. Charnay*, 537 F.2d 341, 347 n. 7 (9th Cir.), *cert. den.*, 429 U.S. 1000, 97 S.Ct. 527, 50 L.Ed.2d 610 (1976). Any additional facts which may be shown at trial will not be considered. *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 741 (9th Cir.), *cert. den.*, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954).

The defendant failed to disclose to Amerco both his receipt of these payments and his concomitant conflict of interest. He continued to represent to Amerco that he was a loyal and honest employee.

Bohonus was indicted on March 7, 1979 on 12 counts of mail fraud [3] for causing mail deliveries between August 28, 1974 and June 3, 1975.[4] The amounts of the payments range from $1,753.47 to $4,469.43. The indictment charges the defendant with knowingly causing these 12 deliveries for the purpose of executing a scheme which he devised and intended to devise to defraud Amerco of (1) its right to have its business conducted honestly; (2) its right to honest and loyal and disinterested services of its employee; and (3) its right to the secret profits obtained by its employee.[5]

II. *Employee Disloyalty Under § 1341.*

■ The manifest purpose of the mail fraud statute is the protection of the post office from use in the execution of frauds. *Durland v. United States*, 161 U.S. 306, 314, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896) (interpreting a predecessor statute); *United States v. States*, 488 F.2d 761, 767 (8th Cir. 1973), *cert. den.*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212, *cert. den. sub nom., United States v. McCoy*, 417 U.S. 950, 94 S.Ct. 3078, 41 L.Ed.2d 671 (1974). The Supreme Court has long recognized that the parameters of "scheme or artifice to defraud" are not to be limited to common law concepts of fraud. *Durland, supra*, 161 U.S. at 312–13, 16 S.Ct. at 510–11. Several circuits have held that the statute is to be broadly construed in light of its purpose. *See Gregory v. United States*, 253 F.2d 104, 110 (5th Cir. 1958); *United States v. McNieve*, 536 F.2d 1245, 1247 (8th Cir. 1976). This court, however, has joined other circuits in holding that "section 1341 should be carefully and strictly construed in order to avoid extension beyond the limits intended by Congress." *United States v. Kelem*, 416 F.2d 346, 347 (9th Cir. 1969), *cert. den.*, 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1970), *accord, United States v. Edwards*, 458 F.2d 875, 880 (5th Cir.), *cert. den. sub nom.*, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972); *United States v. Mandel*, 591 F.2d 1347, 1357 (4th Cir. 1979), *aff'd on other grounds*, 602 F.2d 653 (4th Cir. 1979) (en banc).

The *McNieve* court aptly pointed out that these points of view are not "necessarily irreconcilable":

As *Durland* recognized, the "definition of fraud" in the mail fraud statute was intended by Congress to be broader than the definition of fraud recognized at common law. . . . However, courts should strictly construe § 1341 to assure that the statute is not extended beyond this congressional intent. The key inquiry is, therefore, to determine how far

---

3. Arizona has no commercial bribery statute. Therefore, the appellee could not have been indicted under the Travel Act, 18 U.S.C. § 1952. The Supreme Court recently held that bribery of private employees in violation of the state criminal statutes violates that act. *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

4. The Statute of Limitations apparently precluded the government from charging the appellee with any mail fraud violations which may have occurred prior to August, 1974.

5. Paragraph 8 of each count of the indictment provides that:

Beginning on or about March 1972 and continuing thereafter up to and including June 1975, in the District of Arizona and elsewhere, JERRY R. BOHONUS, the defendant, devised and intended to devise a scheme and artifice to defraud:

a. Amerco and its wholly owned subsidiaries of their right to have their company's business and affairs conducted honestly, impartially, free from deceit, craft, trickery, corruption, fraud, undue influence, dishonesty, and conflict of interest;

b. Amerco and its wholly owned subsidiaries of their right to the conscientious, loyal, honest, faithful, disinterested and unbiased services, decisions, actions and performance of duties by defendant JERRY R. BOHONUS, free from corruption, partiality, willful omission, bias, dishonesty, misconduct, conflict of interest and fraud;

c. Amerco and its wholly owned subsidiaries of certain profits obtained by defendant JERRY R. BOHONUS, kept secret from Amerco, in the performance of his official duties for the wholly owned subsidiaries of Amerco; which said scheme and artifice to defraud is set forth more fully below.

Congress intended to extend § 1341, and then to strictly construe the statute to guarantee that a defendant is not convicted for committing acts which Congress did not intend to be punishable by § 1341.

*United States v. McNieve, supra,* 536 F.2d at 1247, n. 3.

■ The essential elements of mail fraud are (1) the formation of a scheme or artifice to defraud, and (2) use of the mails in furtherance of the scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Kaplan,* 554 F.2d 958, 965 (9th Cir.), *cert. den.,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

■ The fraudulent nature of the "scheme or artifice to defraud" is measured by a non-technical standard. *United States v. Louderman,* 576 F.2d 1383, 1389 (9th Cir.), *cert. den.,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *Gregory v. United States, supra,* 253 F.2d at 109. Thus, schemes are condemned which are contrary to public policy [6] or which fail to measure up to the "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Gregory, supra,* 253 F.2d at 109.

■ Courts have relied on this broad interpretation of "fraud" to hold numerous types of schemes violative of the mail fraud statute. These schemes can be divided into two general categories. Most mail fraud cases fall into the first category, which is comprised of those schemes which deprive others of tangible property interests. There is no question that these types of schemes fall within the purview of the mail fraud statute. *United States v. McNieve, supra,* 536 F.2d at 1248. The alleged scheme to deprive Amerco of the secret profits obtained by the appellee here charges a deprivation of a tangible interest.

The second category includes schemes which deprive others of intangible rights. Most often these cases have involved bribery of public officials. The requisite "scheme or artifice to defraud" is found in the deprivation of the public's right to honest and faithful government. When a public official is bribed, he is paid for making a decision while purporting to be exercising his independent discretion. The fraud element is therefore satisfied. *United States v. Mandel, supra,* 591 F.2d at 1362–63; *Shushan v. United States,* 117 F.2d 110, 115 (5th Cir.), *cert. den.,* 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); *United States v. Brown,* 540 F.2d 364, 374 (8th Cir. 1976).

A public official's non-disclosure of material information has also been held to satisfy the fraud element. In *United States v. Bush,* 522 F.2d 641 (7th Cir. 1975), *cert. den.,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), the failure of a public official to disclose his ownership interest in a corporation he recommended to the city he worked for was deemed fraudulent. Most importantly for our purposes, the court held that the duty to disclose was incident to the defendant's duty as an employee of the city. His employer had the right to negotiate for and award a contract with "all the relevant facts" before it. *Id.* at 652.

The rationale applied to public officials has been carried over into the area of commercial deprivations. In *United States v. Louderman, supra,* this court looked to § 1341 in reviewing a conviction for wire fraud under 18 U.S.C. § 1343,[7] and held that a scheme involving deprivation of intangible rights was prosecutable under §§ 1341 and 1343. The defendants in *Louderman* misrepresented themselves over the telephone as postal or phone company employees in order to gather confidential informa-

---

6. *See, e. g., United States v. Edwards, supra,* 458 F.2d at 880, *United States v. Mandel, supra,* 591 F.2d at 1360.

7. This court noted the similarity in sections 1341 and 1343 which, we stated, is that "they share identical language" in proscribing the formation of schemes to defraud. The Eighth Circuit was cited as in agreement on this point. This court then reviewed the scope of § 1341 as guidance in its determination of the scope of § 1343. *United States v. Louderman, supra,* 576 F.2d at 1387, n. 3.

tion. This court recognized a prosecutable fraud in the deprivation of the phone company and post office patrons of their (intangible) right to privacy and of part of the services for which they were paying. *Id.* at 1387.

The *Louderman* rationale applies equally well to employee disloyalty. Indeed, other courts which have faced the issue have consistently held that a scheme to defraud an employer of loyal service is prohibited under § 1341 provided the mails were used in furtherance of the scheme and specific intent (discussed *infra*) is shown. *See United States v. Bryza,* 522 F.2d 414, 421–22 (7th Cir. 1975), *cert. den.,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. George,* 477 F.2d 508, 512 (7th Cir.), *cert. den.,* 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61 (1973); *Abbott v. United States,* 239 F.2d 310 (5th Cir. 1956); *United States v. Hasenstab,* 575 F.2d 1035 (2d Cir.), *cert. den.,* 439 U.S. 827, 99 S.Ct. 100, 58 L.Ed.2d 120 (1978).

In *United States v. George, supra,* the Seventh Circuit held that a kickback scheme which deprived an employer of the honest and faithful services of its employee constituted a scheme to defraud for purposes of the mail fraud statute. *Id.* at 513.

The indictment in *United States v. Bryza, supra,* like the indictment below, charged the employee with devising a scheme to defraud his employer of (1) its right to have its business conducted in an honest manner; (2) the honest service of its employee; and (3) the secret profits retained by its employee. In reviewing a conviction, the *Bryza* court held that "a deprivation of an employee's loyal services can amount to actual fraud under the mail fraud statute." *Id.* at 422.[8]

■ We conclude that depriving an employer of one's honest services and of its right to have its business conducted honestly can constitute a "scheme to defraud" under § 1341. Of course, the requisite spe-

cific intent and use of the mails in furtherance of the scheme must be alleged in the mail fraud indictment and proven at trial.

■ The specific intent requirement is an aspect of the "scheme to defraud" requirement; i. e., there is no fraudulent scheme without specific intent. *See Lemon v. United States,* 278 F.2d 369, 373 (9th Cir. 1960); *United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir. 1979). Thus, the fraud must be active, not merely constructive. *Post v. United States,* 132 U.S.App.D.C. 189, 199, 407 F.2d 319, 329 (D.C. Cir. 1968), *cert. den.,* 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969). The government proves specific intent if it proves that the scheme was "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Irwin v. United States,* 338 F.2d 770, 773 (9th Cir. 1964), *cert. den.,* 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965). This intention is shown by examining the scheme itself. *United States v. Reid,* 175 U.S.App.D.C. 120, 126, 533 F.2d 1255, 1261 (D.C. Cir. 1976); *Silverman v. United States,* 213 F.2d 405 (5th Cir.), *cert. den.,* 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653 (1954). The fraudulent scheme need not be one which includes an affirmative misrepresentation of fact, since it is only necessary for the government to prove that the scheme was calculated to deceive persons of ordinary prudence. Similarly, [t]he "[d]eceitful *concealment* of material facts is not constructive fraud but actual fraud." *Cacy v. United States,* 298 F.2d 227, 229 (9th Cir. 1961) (emphasis added).

■ Neither breach of a fiduciary duty, nor the receipt of secret profits, then, would suffice, standing alone, to show a § 1341 violation; there must be a recognizable scheme formed with intent to defraud. *United States v. McNieve, supra,* 536 F.2d at 1250; *United States v. Mandel, supra,* 591 F.2d at 1363; *Post v. United States, supra,* 132 U.S.App.D.C. at 199, 407 F.2d at

---

8. The *Bryza* court relied in part on the decision in *United States v. Procter & Gamble Co.,* 47 F.Supp. 676 (D.Mass.1942). *Procter & Gamble* is the first reported case in which a court held that employee disloyalty can constitute a viola-

tion of the mail fraud statute: "The actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interest." 47 F.Supp. at 678.

329; *United States v. George, supra,* 477 F.2d at 512.

■ As set out above, the second required element of mail fraud is use of the mails or causing the use of the mails for the purpose of executing the scheme to defraud. *Pereira v. United States, supra,* 347 U.S. at 8, 74 S.Ct. at 362; *United States v. Kaplan, supra,* 554 F.2d at 965. One causes use of the mails when he acts knowing that the use of the mails will follow in the ordinary course of business, or where, though not intended, such use is reasonably foreseeable. *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974); *United States v. Outpost Development Co.,* 552 F.2d 868 (9th Cir.), *cert. den. sub nom., Germain v. United States,* 434 U.S. 965, 98 S.Ct. 503, 54 L.Ed.2d 450 (1977). Mailings do not have to be an essential part of the contemplated scheme, but they must be made (or caused to be made) for the purpose of executing the scheme. *United States v. Maze, supra,* 414 U.S. at 400, 94 S.Ct. at 648.

### III. *The Bohonus Indictment.*

■ An indictment must provide the defendant with a description of the charges against him sufficient to (1) enable him to prepare his defense; (2) ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Russell v. United States,* 369 U.S. 749, 763, 768 n. 15, 771, 82 S.Ct. 1038, 1046, 1049, n. 15, 1051, 8 L.Ed.2d 240 (1962); *United States v. Pheaster,* 544 F.2d 353, 360 (9th Cir. 1976), *cert. den.,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). To satisfy these requirements, the indictment must allege the elements of the

offense charged and the facts which inform the defendant of the specific offense with which he is charged. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir. 1979). The indictment here serves each of these functions. A scheme to defraud is alleged and the appellee is charged with devising and intending to devise this scheme to defraud his employer. The indictment charges that the appellee knowingly caused use of the mails in furtherance of the scheme to defraud. A clear charge of mail fraud has been made and the facts inform the accused of the specific offenses with which he is charged.

### IV. *Vagueness.*

The defendant contends that the statute is unconstitutionally vague as applied in that it did not provide him with reasonable notice that his actions were proscribed.

■ To withstand a vagueness challenge, a criminal statute must be reasonably specific. This court has held that "[a] statute meets the standard of certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Turf Center, Inc. v. United States,* 325 F.2d 793, 795 (9th Cir. 1963).[9]

■ "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). The standard used in examining a statute for uncon-

---

9. *Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), cited by the court below, stands for the same proposition:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportu-

nity to know what is prohibited, so that he may act accordingly. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. 408 U.S. at 108, 92 S.Ct. at 2298–2299 (citations omitted).

stitutional vagueness is whether a person of average intelligence would reasonably understand that his conduct is proscribed.[10] *United States v. Mazurie, supra,* 419 U.S. at 544, 95 S.Ct. at 711; *United States v. Louderman, supra,* 576 F.2d at 1388.

This court recently upheld the application of the wire fraud statute (see footnote 7, *supra*) against a vagueness challenge in *United States v. Louderman, supra.* As discussed above, *Louderman* involved the deprivation of intangible rights as does the case under review.[11] We concluded that, given the nature of the scheme (see discussion, *supra*), the *Louderman* appellants should have understood that their conduct constituted wire fraud.

■ Furthermore, the Supreme Court has "long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" *Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979) (citations omitted). A specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges. It does, however, eliminate the objection that the statute punishes the accused for an offense of which he was unaware. *Screws v. United States,* 325 U.S. 91, 101–102, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945) (plurality opinion); *United States v. Wise,* 550 F.2d 1180, 1186 (9th Cir.), *cert. den.,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977).

■ Mail fraud is a specific intent crime. The prosecution must prove that the defendant engaged in his actions with intent to defraud his employer. This intent was alleged in the indictment.[12] Since we must assume the veracity of the allegations contained in the indictment,[13] we must assume that the appellee intended to defraud Amerco. The defendant cannot, then, maintain that he was unaware of the offense.

■ The defendant might well argue that, despite an intent to defraud, a reasonable person would yet be unaware that the defendant's actions here constituted a "scheme" which was made illegal by § 1341. But any such contention must also fail. A vagueness challenge will not be upheld if judicial explication of a statute provides sufficient clarity to afford fair notice. *United States v. Broncheau,* 597 F.2d 1260, 1263 (9th Cir.), *cert. den.,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979); *United States v. Fithian,* 452 F.2d 505, 506 n. 1 (9th Cir. 1971). The numerous decisions which have applied § 1341 to employee disloyalty and to the deprivation of intangible rights in general [14] afforded the defendant reasonable notice that his conduct might well fall within the proscriptions of the mail fraud statute. This court has held that it is not ". . . unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *United States v. Wise, supra,* 550 F.2d at 1186, citing *Boyce Motor Lines, Inc. v. United States, supra,* 342 U.S. at 340, 72 S.Ct. at 330.

The issue, therefore, is whether the mail fraud statute gave the defendant reasonable notice that his receipt of payments through the mail in accordance with his

---

**10.** The application of § 1341 has been upheld against vagueness challenges by numerous courts. *See, for example, Louderman, supra,* 576 F.2d at 1388, *United States v. Condolon,* 600 F.2d 7, 9 (4th Cir. 1979), *United States v. Feinberg,* 535 F.2d 1004, 1010 (7th Cir.), *cert. den.,* 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976). Appellants cites several additional cases in which vagueness challenges were likewise unsuccessful.

**11.** The fact that the *Louderman* defendants misrepresented their identities is not a critical distinction for purposes of examining the mail or wire fraud statutes for impermissible vague-

ness. As discussed above, the prosecution must prove intent to defraud; the *type* of deception alleged is irrelevant.

**12.** For purposes of the mail fraud statute, a scheme is not fraudulent without specific intent. An allegation that the defendant intended to devise a scheme to defraud his employer (see footnote 5, *supra*), then, charges specific intent. See discussion *supra*.

**13.** See footnote 2, *supra*.

**14.** See cases cited in Section II, *supra*.

kickback scheme constituted a criminal offense. We hold that it did. A "person of average intelligence" would have been aware that the defendant's actions in soliciting and receiving kickbacks, failing to disclose their receipt to Amerco, and writing a letter purporting to cancel the Safemove Program when he never intended a cancellation fell within the proscription of § 1341 if use of the mails in furtherance was, at least, reasonably foreseeable.

Accordingly, we reverse and remand for further proceedings.