988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
William E. O'DONNELL Defendant-Appellant.
 No. 91-30470.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1993.
Decided March 11, 1993.
 
 Appeal from the United States District Court for the District of Idaho, No. CR-91-15-EJL, Edward J. Lodge, District Judge, Presiding.
 D.Idaho
 AFFIRMED.
 Before EUGENE A. WRIGHT, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant William O'Donnell was convicted by jury of making false statements to a government agency, mail fraud, and causing the preparation of a false tax return. 18 U.S.C. §§ 1001, 1341 and 26 U.S.C. § 7206(2). In this appeal, he challenges the sufficiency of the evidence on the false statement and false tax return counts, objects to part of the jury instructions on the mail fraud count, and alleges that the portion of the indictment charging him with mail fraud was defective because it failed to allege that he defrauded anyone. We affirm.
 
 I. Background
 
 3
 O'Donnell was an employee of Westinghouse and worked at a Nuclear Research Facility in Idaho. Westinghouse had contracts with the Department of Energy, so it required its employees to avoid conflicts of interest. Pursuant to its conflict of interests policy, Westinghouse told O'Donnell in March of 1984 that he must disassociate himself from Dynamics, a small mechanical contracting firm which O'Donnell had helped to found, but which did a significant amount of business with the facility at which O'Donnell worked.
 
 
 4
 In May of 1984, O'Donnell purportedly sold his stock in Dynamics to his father-in-law, Norris. However, the circumstances surrounding this transaction--Norris's complete lack of knowledge of the business and interest in the stock, the fact that O'Donnell paid Norris' tax liability arising from the stock, and Norris' testimony that he was only "holding" the stock and did not want to be exposed to any financial risks because of it--convinced the jury that the transaction was a sham.
 
 
 5
 O'Donnell continued to have other ties to Dynamics. Among other things, he personally guaranteed bank loans for Dynamics, he loaned it money, he participated in its corporate meetings, and he used vehicles owned by it. Nonetheless, when asked in October of 1987 by a criminal investigator from the Department of Energy (DOE), he said that he had completely disassociated himself from Dynamics, except for social ties to one of its officers.
 
 
 6
 This statement to the DOE investigator was the basis of O'Donnell's "false statement" indictment, and the mail fraud indictment was based on his mailing of similar statements denying association with Dynamics. Norris' claimed ownership of the Dynamics stock for tax purposes resulted in O'Donnell's indictment for aiding and abetting false tax returns.
 
 
 7
 II. Sufficiency of Evidence on False Statement Count
 
 
 8
 O'Donnell claims that, when viewed in the context of the interrogation, his statement that he had completely disassociated from Dynamics was not false. His argument is that the purpose of the interview was to inquire into possible influence peddling on behalf of Dynamics, so the term "association" did not, in that conversation, refer to financial interest.
 
 
 9
 We review this issue to see if, when all inferences favorable to the prosecution are drawn, a rational trier of fact could find enough evidence to convict O'Donnell of making a false statement. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 10
 There was enough evidence for a rational jury to conclude beyond a reasonable doubt that O'Donnell's statement was a lie. Although he claims that he was unaware of the purpose of the interview, when debriefed by Westinghouse about the interview he says he understood it to concern "a conflict of interest thing with Dynamics." RT 77. The jury could find that he said he had fully divested himself of his interest to throw the agent off the trail of an existing, material conflict of interest. The jury could, on the evidence before it, consider and reject O'Donnell's claim that he truthfully responded to what he thought the agent was asking. They could and evidently did decide he lied about what he knew the agent was asking.
 
 III. Mail Fraud Indictment
 
 11
 O'Donnell argues that the mail fraud indictment was deficient in that it failed to allege that (1) his scheme defrauded anyone of "money, property, or honest services," and (2) he had the requisite intent to defraud. We review the sufficiency of the indictment de novo. United States v. Benny, 786 F.2d 1410, 1414 (9th Cir.1986), cert. denied 479 U.S. 1017 (1986).
 
 
 12
 To be convicted under the mail fraud statute, one must scheme to defraud another of money, property, or honest services. United States v. Mitchell, 867 F.2d 1232, 1233 (9th Cir.1989). The indictment charges that O'Donnell, by concealing his interest in Dynamics, enabled it to obtain millions of dollars worth of contracts from Westinghouse from which it would have been barred, but for his fraudulent concealment. That would suffice to defraud Westinghouse of money paid to Dynamics and of O'Donnell's honest services. O'Donnell knew that he could not honestly keep both his job with Westinghouse and retain his stake in Dynamics, so by concealing his ties to Dynamics, he could keep a job he otherwise would have to give up, and his company could keep its contracts. Cf. United States v. Bonohus, 628 F.2d 1167 (9th Cir.1980) (company deprived of employee's honest services when employee taking secret kickbacks).
 
 
 13
 Mail fraud requires specific intent, and O'Donnell argues that the indictment did not allege that he meant to cheat Westinghouse or the DOE. Id. at 1172. The indictment specifically alleges that O'Donnell could not have both his job and his stake in Dynamics, and that one of the purposes of the fraudulent scheme was to conceal from Westinghouse his interest in Dynamics. The indictment fulfilled its principal purpose of providing sufficient notice for O'Donnell to prepare his defense. United States v. Lane, 765 F.2d 1376, 1380 (9th Cir.1985). This also forecloses O'Donnell's claim that he did not have sufficient notice of the charges against him. The government provided ample evidence from which the jury could conclude that this charge was proved beyond a reasonable doubt.
 
 IV. Jury Instructions
 
 14
 For the mail fraud count, the trial judge provided the jury with two separate instructions: one covering the deprivation of money and property (No. 28), and one appropriate for deprivation of honest services (No. 29). The judge also gave an instruction defining some of the terms used in these two instructions (No. 32). O'Donnell complains that instruction 32, from Devitt and Blackmar, defined terms not included in 28 and 29, from the Ninth Circuit form book, and that this might have confused and misled the jury.
 
 
 15
 The trial judge explicitly considered these objections and rejected them. Our standard of review is narrow; " '[a] trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented' " United States v. Cruz, 783 F.2d 1470, 1472 (9th Cir.1986) quoting United States v. Marabelles, 724 F.2d 1374, 1382-83 (9th Cir.1984) (citations omitted). We have examined the material which O'Donnell claims was superfluous and we do not see how it could lead to an erroneous verdict. The trial judge's explanation of why he exercised his discretion as he did persuades us that it was not abused.
 
 
 16
 V. Sufficiency of Evidence on Tax Return Count
 
 
 17
 O'Donnell contends that there was not sufficient evidence that he aided or abetted Norris in filing false tax returns. His argument has three prongs. First, he disputes the jury's finding that the ownership of the stock never passed from himself to Norris. He cites the evidence presented which supported the claim of a bona fide transfer, namely the endorsement of the stock certificate, and his own and Norris' testimony. Our test for sufficiency of evidence is whether, when all the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved its case beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 18
 There was significant evidence that the transfer was not bona fide. O'Donnell paid Norris for the amount of his incremental tax liability, Norris had no knowledge of the business conducted by the closely-held concern, nor did he appear to take any steps to educate himself or participate in its affairs. He passed to O'Donnell $10,000 worth of income from Dynamics, and testified that he did not want to get financially involved in Dynamics. There was sufficient evidence for a rational trier of fact to conclude that O'Donnell did not mean to pass to Norris all the risks and rewards of an ownership share in Dynamics.
 
 
 19
 Second, O'Donnell argues that he in no way helped Norris file his tax return, and therefore cannot be held accountable for aiding and abetting. But O'Donnell himself admitted that he solicited Norris to take part in this scheme, and Norris' filing of tax returns showing an ownership interest in Dynamics was a necessary part of this scheme. Moreover, O'Donnell wrote Norris a letter offering to reimburse him for any extra tax liability. All that is necessary is that the defendant " 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991) quoting Nye & Nissen v. United States, 336 U.S. 613, 620 (1948). Here, O'Donnell initially solicited Norris to the scheme and paid his incremental tax liability, thereby making it much less costly for Norris to file his tax return.
 
 
 20
 O'Donnell's strongest argument is that there was no evidence that he had the requisite specific intent to defraud the government of tax revenue, as required by United States v. Salerno 902 F.2d 1429 (9th Cir.1990). In Salerno, employees of a casino were skimming money, and as a result the casino reported lower profits, and thereby paid less tax. In reversing their conviction for aiding or assisting the filing of false tax returns, the court held "[t]he law requires specific intent to defraud the I.R.S. and this means that the government must prove not only that the defendant's conduct affected tax revenue, but that tax fraud was an objective." Id. at 1433. This case bears a facial similarity to Salerno because O'Donnell's ultimate goal here was not to cheat the IRS, but to hoodwink Westinghouse. But, unlike Salerno, in this case the tax fraud was a necessary means to the end of deceiving Westinghouse. The casino employees were indifferent to whether the casino paid higher or lower taxes and had no interest in its tax return. O'Donnell needed Norris to claim ownership of the stock to advance the plan, so a false tax return by Norris was an essential part of his fraudulent scheme.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3