81 F.3d 170
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael BENSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander Peter STEBLOWSKY, Defendant-Appellant.
 No. 95-50140, 95-50150.
 United States Court of Appeals, Ninth Circuit.
 Submitted and Argued Feb. 7, 1996.
Decided April 4, 1996.
 
 Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Benson was convicted of and sentenced for wire fraud and conspiracy. In a joint trial, Alexander Peter Steblowsky was convicted of and sentenced for wire fraud; however, the jury could not reach a verdict on his conspiracy count, which was later dismissed without prejudice. Benson and Steblowsky now appeal, raising challenges jointly and individually. We affirm.
 
 FACTS AND PROCEEDINGS
 
 3
 Benson worked as a telephone solicitor for National Marketing Unlimited (NMU), a San Diego-based telemarketing company, from September 9, 1991 through March 1993. Alexander Steblowsky worked as a telephone solicitor and manager for NMU from November 1991 through March 1993. On February 26, 1993, a sealed 41-count indictment involving 19 defendants associated with NMU was filed, alleging federal wire fraud offenses, conspiracy, and aiding and abetting. On March 4, 1993, the FBI served arrest and search warrants on NMU employees and seized computer records at NMU. On March 4, 1993, Steblowsky pleaded not guilty. On February 25, 1994, a superseding 34-count indictment was filed, naming 5 additional codefendants including Benson. Steblowsky was charged on 9 counts: Count 1 for conspiracy to commit wire fraud, and Counts 2 through 9 for committing or aiding and abetting wire fraud in violation of 18 U.S.C. §§ 2, 1343. Benson was charged on 5 counts: Count 1 for conspiracy, and Counts 29 through 33 for wire fraud and aiding and abetting.
 
 
 4
 Jury trial began jointly for Benson and Steblowsky on August 2, 1994. Six NMU customers testified against Benson, who testified in his own behalf. Seven NMU customers testified against Steblowsky about transactions on which he participated. Steblowsky testified in his own behalf.
 
 
 5
 On September 7, 1994, the jury retired for deliberations. On September 12, 1994, the third day of deliberations, Channel 10 News ran a two-minute, twelve-second segment on local television about NMU's fraud case, which was narrated by the news station's "Troubleshooter," Marti Emerald. The segment contained portions of two videotapes introduced at trial by the government as exhibits in this case; the videotapes were produced and maintained by NMU or its owners. According to the U.S. Attorney's Office, Charles La Bella, the Chief of the Criminal Division, authorized the release of the video exhibits after the Channel 10 News producer requested them from Assistant U.S. Attorney Julia Craig. The U.S. Attorney's Office asserts that release of trial exhibits is required by Valley Broadcasting Co. v. United States District Court, 798 F.2d 1289, 1295 (9th Cir.1986) (holding on writ of mandamus that under the circumstances of the case and during trial, a television station should have access to duplicates of audio and videotapes used as trial exhibits). On September 13, 1994, a day after the broadcast, Steblowsky's counsel informed District Judge Rhoades about the possibility that the jurors, who were not sequestered, may have seen the segment and been influenced by it. Judge Rhoades conducted a group voir dire of the jurors and asked them if they had seen or heard information about the case in the last few days. Five jurors acknowledged they had, while three said that some of the other jurors mentioned in the jury room that there had been a broadcast on TV. Judge Rhoades then asked whether any juror had seen the "show," to which at least four jurors responded affirmatively. The district court conducted collective and individual voir dire of the jurors and also permitted all attorneys to question the jurors about what they had seen or heard. Benson's counsel questioned separately three jurors. Collectively, the jurors all responded affirmatively to the judge's questions (1) whether they had not discussed the program and (2) whether, in spite of whatever they heard about the program, they would not be influenced by it. Judge Rhoades questioned four of these jurors individually and was satisfied that their ability to decide impartially had not been compromised. After voir dire, the defense moved for a mistrial based on the jury's exposure to outside publicity. The motion was denied.
 
 
 6
 On the same day, and after about two more hours of deliberations, the jury returned guilty verdicts against Benson on all the counts of which he had been charged, and against Steblowsky on all counts except for Count 1, the conspiracy charge, on which the jury could not reach a decision. Steblowsky moved for a new trial on February 15, 1995; the court denied this motion but dismissed Count 1 (involving conspiracy) without prejudice.
 
 
 7
 At sentencing, the court found that the amount of loss for which Steblowsky was responsible under U.S.S.G. § 2F1.1(b)(1) was $173,628, his estimated total gross sales, and that the scheme involved "vulnerable victims" under U.S.S.G. § 3A1.1. Steblowsky was sentenced to 37 months in prison on each of the remaining counts to be served concurrently and to be followed by 3 years of supervised release; Steblowsky also was ordered to pay $6,000 in restitution and $350 in penalty assessment. Benson was sentenced to 34 months in prison on each count to be served concurrently and to be followed by 3 years of supervised release; Benson also was ordered to pay $3,000 in restitution and $250 in penalty assessment. On March 16, 1995, both Benson and Steblowsky timely filed an appeal.
 
 ANALYSIS
 
 8
 Steblowsky and Benson raise a number of issues on appeal, of which the effect of the news program on the jurors' deliberation deserves the most discussion. After a careful review of the record, we do not believe the district abused its discretion in the steps it took regarding the alleged improper influences on the jurors' deliberation. United States v. Smith, 790 F.2d 789, 795 (9th Cir.1986). The court conducted individual and collective voir dire of the jurors and permitted all counsel present at trial to do the same. The jurors who heard or saw portions of the news program stated that they did not receive any information that was not presented at trial in the government's video exhibits. All the jurors confirmed their ability to decide the case free of influence from any information they may have received from the news program. Steblowsky's and Benson's counsel had their opportunity to cross examine these jurors, but the jurors were not shown to be lacking in credibility in their responses to the court. The jurors' voir dire responses satisfied the district court that whatever they may have seen or heard on television would not influence their deliberation or decision. We do not second guess the district court's judgment.
 
 
 9
 Turning to the other issues raised by Steblowsky and Benson, we hold the district court did not abuse its discretion in denying Benson's and Steblowsky's motion to strike surplusage from the indictment under Federal Rule of Criminal Procedure 7(d). United States v. Terrigno, 838 F.2d 371, 373 (9th Cir.1988). We also hold that Benson waived his claim that he should be allowed to call satisfied customers of NMU to testify. With respect to the disclosure of evidence and after having reviewed the material requested by Benson and Steblowsky and submitted under seal by the government, we conclude that no disclosure of the information was required because the information is not Brady material but is cumulative evidence of the report which the defendants had already obtained. United States v. Strifler, 851 F.2d 1197, 1202 (9th Cir.1988), cert. denied, 489 U.S. 1032 (1989).
 
 
 10
 The district court did not abuse its discretion in seating the juror who had served three weeks earlier on the jury in an unrelated criminal case in which Steblowsky's defense counsel had represented the defendant. The court questioned that juror about her ability to be impartial, and she replied that she would not be influenced by her previous service on a jury and that the "facts are the facts." The juror showed no bias against defense counsel in her responses; if anything, she appeared impressed by his prior performance. The determination about the impartiality of a juror is within the sound discretion of the district court. Mu'Min v. Virginia, 500 U.S. 415, 422 (1991).
 
 
 11
 Nor did the court abuse its discretion in admitting, over a hearsay objection, documents printed from NMU's computers as NMU's business records, given the extensive testimony of Joe Sydney, a computer programmer at NMU, as to the foundation of the records. United States v. Kirk, 844 F.2d 660, 663 (9th Cir.) (per curiam), cert. denied, 488 U.S. 890 (1988). Nor did the court abuse its discretion in denying severance under Federal Rule of Criminal Procedure 14. Zafiro v. United States, 506 U.S. 534, 539 (1993); United States v. Sutton, 794 F.2d 1415, 1427 (9th Cir.1986). Likewise, no error occurred in the court's acceptance of the assertion of the fifth amendment privileges by two witnesses who were called by the defense and who had already been convicted of conspiracy in the NMU fraud ring. United States v. Tsui, 646 F.2d 365, 367 (9th Cir.1981), cert. denied, 455 U.S. 991 (1982). Given the district court's familiarity with the facts related to the several NMU prosecutions, especially that other codefendants had been prosecuted on both federal and state charges, the district court's ruling was not erroneous. See id. at 368.
 
 
 12
 Having reviewed the record, especially the testimony of the seven witnesses who testified against Steblowsky, we also uphold the district court's denial of Steblowsky's motion for acquittal under Federal Rule of Criminal Procedure 29. United States v. Castaneda, 16 F.3d 1504, 1511 (9th Cir.1994). Ample evidence was presented on which to convict Steblowsky of wire fraud. See United States v. Louderman, 576 F.2d 1383, 1387-88 & n. 3 (9th Cir.), cert. denied, 439 U.S. 896 (1978).
 
 
 13
 As to Steblowsky's sentence, we do not find any clear error in the district court's factual findings regarding the amount of loss for which he was held accountable under his sentence. United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.), cert. denied, 113 S.Ct. 2997 (1993); United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc) (applying U.S.S.G. § 2F1.1 and noting comment note 6). The NMU records of Steblowsky's sales on which the amount of loss were introduced as evidence at trial and were a proper basis for sentencing purposes. U.S.S.G. § 6A1.3. Nor do we perceive any clear error in the district court's findings that Steblowsky's defrauded customers were vulnerable victims under U.S.S.G. § 3A1.1; the finding is supported by the ages of the several witnesses who testified against Steblowsky and the pattern of repeated phone callings in which Steblowsky engaged at NMU to customers more prone to send in money. United States v. Caterino, 957 F.2d 681, 683 (9th Cir.), cert. denied, 506 U.S. 843 (1992).
 
 
 14
 Accordingly, we AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3