**UNITED STATES of America, Appellee,**

v.

**James T. McNEIVE, Appellant.**

**No. 75–1889.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1976.

Decided June 24, 1976.

Charles A. Seigel, St. Louis, Mo.; Hyman G. Stein, St. Louis, Mo., on brief.

Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo.; Donal J. Stohr (former U. S. Atty.), Barry A. Short, U. S. Atty., effective May 15, 1976, and Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, HEANEY and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

Defendant, James McNeive, was convicted in a jury trial on ten counts of violating the federal mail fraud statute, 18 U.S.C. § 1341 (1970). This appeal compels us to consider whether or not § 1341 can be extended to criminalize McNeive's receipt of gratuities as a public official.

■ A plenary consideration of the relevant facts in this case is necessary for a full understanding of the appeal. In reciting the facts, we are cognizant that the evidence must be viewed in the light most favorable to the Government as the prevailing party. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

McNeive served as the Chief Plumbing Inspector for the City of St. Louis from 1962 until June, 1974, when he retired. One of his duties was the issuance of plumbing permits to various contractors. The Preston Plumbing Company (Preston) had long indulged in the practice of sending its plumbing permit applications accompanied with two checks—one payable to the City of St. Louis for the proper permit fee and a second one, payable to cash, for $5 for each permit application. The receipt of these $5 gratuities or tips by McNeive is the basis for the Government's contention that McNeive violated § 1341.

The Chief Plumbing Inspector exercises no discretion in the issuance of plumbing permits since, if the application is in proper order and conforms with the ordinance requirements, the issuance of the permit is required by law. The evidence unequivocally shows that all of Preston's plumbing permit applications conformed in all respects with the law. When McNeive assumed the duties of Chief Plumbing Inspector and received the first gratuity check from Preston, he apparently did not know the reason for the check as he sought an explanation from Preston, who told him, "I would appreciate him [McNeive] accepting the gratuity. It is a simple favor to myself to save me from running down to the City." There is no evidence whatever to indicate that these tips were demanded by McNeive, that he refused to process any applications without the tips or that he extended any special favors or preferences to Preston for the tips. There was no impropriety in submitting plumbing applications by mail as this was a common procedure and, of course, was a timesaver for all parties involved.

McNeive also received and processed some of Preston's applications for ancillary permits, such as water tap and excavation permits, which were obtainable from other city offices. There is nothing in the record to show that McNeive used any undue influence on or exacted any special favors from fellow city employees who issued these ancillary permits. In performing the task of obtaining these ancillary permits from Preston, McNeive was given a $5 gratuity for each application. McNeive's acceptance of the gratuities did violate an unwritten departmental policy against the receipt of gratuities. Also, the receipt was a possible violation of a city ordinance which prohibited the acceptance by city officials of "any payment or gift of money * * * for any service performed in his official capacity * * *."[1] McNeive received, over a four year period, $490 in gratuities from Preston.

The Government did not become aware of McNeive's receipt of gratuities until after his retirement in 1974. The Government, in investigating possible corruption in the higher echelons of city government in St. Louis, informally summoned McNeive to the F.B.I. office to find out what he knew about the activities of Kenneth Brown, a former Building Commissioner of St. Louis,

---

1. Section 41.040 of the Revised Code of the City of St. Louis provides:

   The official duties of officers and employees of the City shall be performed for the benefit of the public only and shall be discharged faithfully regardless of personal considerations. No officer or employee shall, for private gain, grant any special considerations, treatment or advantage to any person. Nor shall any officer solicit or accept any payment or gift of money or any other thing of value for any service performed in his official capacity nor for the doing of any act which he is required by law to do.

who was then under investigation. During that interview, these gratuities were voluntarily disclosed to the F.B.I. and inquiry was made of the F.B.I. by McNeive as to whether the practice was improper. The F.B.I. agents were unsure of its legality and sought the advice of the United States Attorney who subsequently obtained an indictment [2] against McNeive for ten counts of violating the federal mail fraud statute, 18 U.S.C. § 1341. The indictment in part characterized the defendant's receipt of these tips as a "scheme or artifice to defraud the City of St. Louis and its citizens of their right to the honest, faithful, and lawful decisions and actions in the performance of [McNeive's] official duties * * *, and of their right to have the City's business and its affairs conducted honestly * * * and in accordance with the laws of the state and of the City * * *."

For the Government to establish a violation of § 1341, it must prove "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *see United States v. Nance,* 502 F.2d 615, 618 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396

(1975). Since the term "scheme to defraud" connotes some degree of planning by the perpetrator, it is essential that the evidence show the defendant entertained an intent to defraud. *United States v. Nance, supra,* at 618. We do not think there was here involved any "scheme to defraud" as proscribed by § 1341.

Historically, § 1341 provides no foundation for the pervasive view the Government now accords it. The predecessor of the present § 1341 proscribed "any scheme or artifice to defraud" which was effected "by either opening or intending to open correspondence or communication with any person * * * by means of the post office establishment of the United States * * *." Act of June 8, 1872, ch. 335, § 301, 17 Stat. 323, *as amended,* Act of March 2, 1889, ch. 393, § 1, 25 Stat. 873. Interpreting this statute for the first time, the Supreme Court recognized that the definition of "scheme or artifice to defraud" is not to be limited to common law concepts of fraud and false pretenses. *Durland v. United States,* 161 U.S. 306, 312–13, 16 S.Ct. 508, 40 L.Ed. 709 (1896). The language is to be construed in light of the statute's manifest purpose to prohibit all attempts to defraud by any form of misrepresentation. 161 U.S. at 313, 16 S.Ct. 508.[3]

---

**2.** The indictment alleges, and the Government stresses on appeal, that McNeive violated state and municipal law. Missouri law prohibits any official from unlawfully and willfully receiving any fee to perform his duty. Mo.Rev.Stat. § 558.140. Section 41.040 of the Revised Code of St. Louis proscribed the receipt of money for the official performance of duties. McNeive denies that his activities violated either of these enactments. For purposes of this case, we need not determine whether McNeive actually violated state or municipal law. "[T]he fact that a scheme may or may not violate State law does not determine whether it is within the proscriptions of [§ 1341]." *United States v. Edwards,* 458 F.2d 875, 880 (5th Cir.), *cert. denied sub nom. Huie v. United States,* 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972).

**3.** The *Durland* case has engendered some difficult questions of statutory construction. This court, citing *Durland,* has stated that "the definition of fraud in § 1341 is to be broadly and liberally construed to further the purpose of the statute; namely, to prohibit the misuse of the mails to further fraudulent enterprises." *United States v. States,* 488 F.2d 761, 764 (8th Cir.

1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *accord, United States v. Mirabile,* 503 F.2d 1065, 1066 (8th Cir. 1974), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1395 (1975). Other courts have recognized that "section 1341 should be carefully and strictly construed in order to avoid extension beyond the limits intended by Congress." *United States v. Kelem,* 416 F.2d 346, 347 (9th Cir. 1969), *cert. denied,* 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1970); *accord, United States v. Edwards,* 458 F.2d 875, 880 (5th Cir.), *cert. denied sub nom. Huie v. United States,* 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972). The "broad construction" language contained in some of this court's previous opinions is not, when placed in the proper context, necessarily irreconcilable with these latter decisions. As *Durland* recognized, the "definition of fraud" in the mail fraud statute was intended by Congress to be broader than the definition of fraud recognized at common law. This particular point was discussed in *United States v. States, supra.* However, courts should strictly construe § 1341 to assure that the statute is not extended beyond this congressional intent. The key inquiry is, therefore, to determine how far Con-

This 1872 enactment was modified in certain respects by Congress in 1909. Act of March 4, 1909, ch. 321, § 215, 35 Stat. 1130. The Supreme Court, in interpreting this 1909 statute, noted that congressional modifications in the wording of the statute broadened its scope by permitting a violation to be established by proving a scheme to defraud which has been executed or intended to be executed by placing a letter in any post office. *United States v. Young,* 232 U.S. 155, 161, 34 S.Ct. 303, 58 L.Ed. 548 (1914).

The wording of the present mail fraud statute is derived from the Act of June 25, 1948, ch. 645, § 1341, 62 Stat. 763.[4] This 1948 enactment modified none of the operative provisions of the 1909 statute and merely deleted some superfluous language characterized as the "obsolete argot of the underworld." 18 U.S.C. § 1341 (1970), Reviser's Notes. Consequently, the somewhat liberalized proof requirements articulated in *United States v. Young, supra,* prevail under the present statute. *See Pereira v. United States, supra,* 347 U.S. at 8, 74 S.Ct. 358.

At no time throughout the evolutionary development of the mail fraud statute did Congress attempt to define or establish the precise parameters of the term "scheme to defraud." The legislative history, which may have given some insight into the congressional considerations underlying the statute, is sparse. Courts, therefore, have been required to discern the purpose[5] and reach of § 1341 from the broad, unqualified language of the statute itself. The relative lack of definite standards contained in § 1341 has permitted the courts to exercise wide latitude in determining what schemes are within the purview of that statute. In interpreting the language of the mail fraud statute, courts have identified numerous types of schemes which are violative of the statute. These various schemes fall broadly into two general categories.

The first category, which comprises the bulk of the mail fraud cases, includes the many deceptive schemes which are intended to defraud individuals of money or other tangible property interests. There can be little dispute that these schemes are within the scope of § 1341 since they involve calculated efforts to use misrepresentations or other deceptive practices to induce the innocent or unwary to give up some tangible interest. Included in this category are: (1) insurance fraud;[6] (2)

gress intended to extend § 1341, and then to strictly construe the statute to guarantee that a defendant is not convicted for committing acts which Congress did not intend to be punishable by § 1341. "[B]efore one can be punished, it must be shown that his case is plainly within the statute." *Fasulo v. United States,* 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443 (1926) (construing the predecessor to § 1341). The analysis outlined above comports with the general rule that penal statutes are to be strictly construed to avoid extension beyond the intent of Congress. *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); 3 C. Sand, *Sutherland Statutory Construction* § 59.-03 (4th ed. 1974).

**4.** The mail fraud statute now provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any

matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341 (1970).

**5.** It has been suggested that § 1341 was intended to be a "stopgap" device which would permit the prosecution of newly-conceived frauds until such time that Congress enacted particularized legislation to cope with the new frauds. *United States v. Maze,* 414 U.S. 395, 405–06, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (Burger, C. J., dissenting).

**6.** *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917); *United States v. Minkin,* 504 F.2d 350 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975).

"check kiting" schemes;[7] (3) "credit card" swindles in which the defendant either fraudulently secures or fraudulently uses a credit card;[8] (4) "referral plan" schemes in which the defendant persuades individuals to purchase goods and misrepresents the extent to which a purchaser can avoid paying all or part of the purchase price by referring new customers to the defendant;[9] and (5) any other type of nefarious scheme in which the defendant solicits funds or tangible property interests from innocent or misinformed investors by engaging in a deceptive course of action.[10] McNeive's alleged scheme to defraud cannot be appropriately classified in this category. The indictment does not allege, and no proof at trial established, that the allegedly defrauded party, the City of St. Louis, was deprived of any money or suffered the loss of any tangible property interest.

The second category of § 1341 deceptive schemes is comprised of those which operate to deprive individuals of intangible rights or interests. In *United States v. States,* 488 F.2d 761, 765 (8th Cir. 1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974), this court ruled that a vote fraud scheme was a proper subject for a mail fraud prosecution since the scheme defrauded citizens of "certain intangible political and civil rights." This expansive interpretation was deemed justified since limiting § 1341 to deprivations of tangible interests alone would weaken the efficacy of the statute by excluding from its scope the multifarious schemes which deprive innocent victims of significant, often constitutionally protected, intangible rights.

An increasing number of courts have expanded the rationale of *United States v. States, supra,* and related cases beyond the arena of political and civil rights. These courts have held that a recreant employee can be prosecuted under § 1341 if he breaches his allegiance to his employer by accepting bribes or kickbacks in the course of his employment, since such conduct defrauds the employer of his right to the employee's honest and faithful services. *United States v. Bryza,* 522 F.2d 414 (7th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 2237, 48 L.Ed.2d 837, 44 U.S.L.W. 3685 (1976). Similar schemes devised by public officials have been viewed as defrauding state or municipal citizens of the same intangible right. *United States v. Isaacs,* 493 F.2d 1124 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

The Government relies upon this latter strain of cases in seeking to have McNeive's conduct characterized as a scheme to defraud the City of St. Louis of its right to the loyal and honest service of its public officials, and thus within the ambit of § 1341. In support of its position, the Government relies primarily upon the Seventh Circuit cases of *United States v. Bush,* 522 F.2d 641 (7th Cir. 1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d

---

7. *E. g., Stevens v. United States,* 227 F.2d 5 (8th Cir. 1955).

8. *E. g., United States v. Green,* 494 F.2d 820 (5th Cir.), *cert. denied,* 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974); *Adams v. United States,* 312 F.2d 137 (5th Cir. 1963). The Supreme Court has curtailed the prosecution of credit card swindles by ruling that mailings between the defrauded retailer and the credit card issuer, which necessarily occur after the defendant has fraudulently obtained the goods or services, are not in furtherance of the deceptive scheme. Therefore, the mailing requirement of § 1341 is not satisfied in those circumstances. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

9. *E. g., Nickles v. United States,* 381 F.2d 258 (10th Cir. 1967); *Fabian v. United States,* 358 F.2d 187 (8th Cir.), *cert. denied,* 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966).

10. The types of fraudulent schemes falling within this classification are limited only by the ingenuity of the perpetrator. *E. g., Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Comyns,* 248 U.S. 349, 39 S.Ct. 98, 63 L.Ed. 287 (1919); *United States v. Cohen,* 516 F.2d 1358 (8th Cir. 1975); *Easter v. United States,* 441 F.2d 425 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971). No misrepresentation of fact is required if the scheme is reasonably calculated to deceive persons of ordinary prudence. *Silverman v. United States,* 213 F.2d 405 (5th Cir.), *cert. denied,* 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653 (1954).

748, 44 U.S.L.W. 3532 (1976); *United States v. Keane,* 522 F.2d 534 (7th Cir. 1975), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746, 44 U.S.L.W. 3532 (1976); *United States v. Isaacs, supra*; and *United States v. George,* 477 F.2d 508 (7th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973). In each of these cases, the court found that either an employee or public official had breached his duty to provide faithful and honest services and that this breach contributed to the court's finding of a § 1341 scheme to defraud. These opinions contain broad statements which the Government cites as supportive of its position in the present case. However, these general statements, standing alone, are not necessarily controlling and must be considered in the proper context of the opinion in which they appear. It is a general rule that expressions in an opinion are to be considered in the light of the factual context of the case. *Cohens v. Virginia,* 6 Wheat. 264, 398, 19 U.S. 120, 179, 5 L.Ed. 257 (1821). Our review of these cases convinces us that none is dispositive of the instant case.

*United States v. George, supra,* is a kickback case. It involved a defendant who permitted his personal financial interests to interfere with his duty to secure the most favorable bargain for his employer. However, the tips received by McNeive were clearly not kickbacks and the City of St. Louis, which received the full fee for the permits, suffered no pecuniary detriment because of McNeive's failure to disclose his practice. In *George,* the pecuniary loss occasioned by defendant's nondisclosure of the kickback scheme was a significant factor since the defendant's secret profit, standing alone without the accompanying loss to the employer, would not have given rise to a § 1341 violation:

> We need not accept the Government's far-ranging argument that anytime an agent secretly profits from his agency he has committed criminal fraud. Not every

breach of every fiduciary duty works a criminal fraud. (Citations omitted.)

477 F.2d at 512; *see Post v. United States,* 132 U.S.App.D.C. 189, 407 F.2d 319, 329 (1968), *cert. denied,* 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969); *Epstein v. United States,* 174 F.2d 754, 765 (6th Cir. 1949).[11]

*United States v. Keane, supra,* is also distinguishable. In that case, Keane, a city alderman, participated in a complicated and clandestine scheme to purchase, through a newly-established investment company, tax delinquent property from county-sponsored scavenger sales. Keane used his position as chairman of the City Finance Committee to secure preferential treatment for the properties in which he maintained a nondisclosed interest and voted on certain matters affecting his property, failing to disclose his interest to other aldermen. The court recognized that certain aspects of Keane's scheme did not suggest criminality, but "the scheme viewed as a whole involve[d] fraudulent conduct." 522 F.2d at 544. The court held that Keane's intentional concealment of his personal interest in the properties affirmatively misled his fellow aldermen and defrauded his constituents of their right to his loyal and honest services; in fact, Keane's scheme constituted an egregious conflict of interest utilized for personal gain.

The activities described in *Keane* cannot be deemed analogous to McNeive's conduct. Keane permitted his personal interest to distort his discretion and to adversely affect the legislative functions of the City Council. McNeive's scheme did not interfere at all with any of his discretionary functions since the issuance of the permits was only a ministerial duty. The tasks that McNeive performed for Preston did not disadvantage the City of St. Louis in any respect and the receipt of gratuities did not deter McNeive from conscientiously performing his duty to enforce the plumbing code strictly and effectively. Furthermore, McNeive's practice

---

**11.** Two other kickback cases cited by the Government, *United States v. Bryza, supra,* and *United States v. Barrett,* 505 F.2d 1091 (7th Cir. 1974), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975), are distinguishable for similar reasons.

did not interfere with the legislative functions of the City.

The Government's reliance upon *United States v. Isaacs, supra,* and other bribery cases [12] is likewise misplaced. The receipt of bribes by a public official to induce him to grant special favors and preferential treatment upon the donor clearly constitutes a breach of that official's duty to perform loyally and honestly. McNeive's conduct in this case, however, does not fit within that mold. The Government does not, and could not, characterize the tips received by McNeive as disguised bribes. Furthermore, the tips did not affect McNeive's discretionary judgment nor result in any official preferential treatment being accorded Preston. McNeive's practice, compared with the egregious bribery scheme in *Isaacs,* is relatively innocuous, and petty to the extent that there is no actual intent to defraud, which is an essential element of the mail fraud statute.

The case of *United States v. Bush, supra,* is likewise not on point. In that case, a public official concealed his interest in an advertising agency and used his official influence to induce the City to issue an advertising contract to his agency. The court, drawing an analogy to kickback cases such as *George,* correctly concluded that defendant's conduct deprived the City of the opportunity of securing the most economically favorable contract. As previously stated, this constituent is absent in the present case.

However, even if we were to assume that McNeive defrauded the City of St. Louis of his honest and faithful service, *Bush* states that this alone is not sufficient for a § 1341 violation.

> Bush's breach of fiduciary duty is important, however, in considering whether he deprived the city of his honest and faithful services. We believe that the mayor,

the city, and most importantly, the citizens were deprived of those services. However, this alone could never be considered a crime under the mail fraud statute. It is only when his failure to provide honest and faithful services is combined with his material misrepresentations to the mayor and [the deputy mayor] and his active concealment that an illegal fraud occurs which is cognizable under § 1341.

522 F.2d at 648.

In *Bush,* as well as in all the other Seventh Circuit cases discussed above, there was evidence that the defendant had made conscious and calculated efforts to actively conceal the nature and scope of his enterprise. In the present case, we find no evidence that McNeive materially misrepresented any facts in order to assure continuation of the gratuities scheme or that he actively concealed his scheme.

Consequently, we conclude that none of the cases relied upon by the Government constitutes dispositive precedential authority for the present case. They all present factual situations which vary significantly from the facts of the instant case.

Based upon the language and underlying policy of § 1341, we conclude that McNeive's conduct is beyond the pale of that statute. We simply do not believe that Congress, by enacting the mail fraud statute, contemplated that a situation similar to McNeive's would be classified as a scheme to defraud. The acceptance of small unsolicited gratuities or tips is not a bribe, kickback, an extortion or a "scheme or artifice to defraud" under the facts of this case.

McNeive's acceptance of these tips could hardly be characterized as a scheme or artifice. McNeive was not the instigator of the gratuity plan in this case and did not solicit any gratuities for his services. He continued to accept Preston's hand-outs only after

---

**12.** In *United States v. Faser,* 303 F.Supp. 380 (E.D.La.1969), the court properly concluded that a bribery scheme violated § 1341. While we agree with the ultimate disposition in that case, we do not accept the broad language contained in the opinion which intimates that

any time an agent secretly profits from his agency, he has defrauded the principal of a tangible benefit and a mail fraud violation has been established. *See United States v. George, supra,* 477 F.2d at 512; *Epstein v. United States,* 174 F.2d 754, 764–65 (6th Cir. 1949).

Preston, upon being approached by McNeive after the latter's receipt of the first gratuity check, had shrouded the gratuities with an aura of legitimacy by stating that they were expressions of his appreciation to McNeive. The record reflects that the City of St. Louis did not suffer any tangible or pecuniary injury from McNeive's practice since it received all the money to which it was entitled. There is no evidence that McNeive deviated from the plumbing code in any respect; on the contrary, many of the Government's witnesses described McNeive as a strict enforcer of the code. We can only conclude, on the basis of the present record, that McNeive was not derelict in any of his affirmative duties as Chief Plumbing Inspector. Finally, and of significance in this case, the record reflects that McNeive did not materially misrepresent the existence or the nature of the gratuity practice and there is no evidence to indicate that he actively concealed his activity. The absence of an attempt to actively conceal the conduct not only contributes to a finding that McNeive's conduct did not constitute a § 1341 scheme to defraud, this fact, coupled with others in this case, also tends to negate a finding that McNeive entertained the requisite intent to defraud. *See United States v. Bush, supra,* 522 F.2d at 648–49.

The facts set forth above exemplify that this is indeed a unique case. No other § 1341 case has condemned conduct similar to McNeive's, nor made a federal case out of a situation which, at its worst, involved such a minor peculation, possibly a misdemeanor. The tipping practice in this case did not evidence any widespread municipal corruption or fraudulent enterprise; the tips only expressed Preston's gratitude to McNeive and there is nothing in the record to indicate that this asserted reason was a mere pretext for something more sinister.

The practice of tipping others as an expression of appreciation for the performance of ministerial tasks and services is not alien to Western civilization, particularly the United States. While we sympathize with the zealous prosecutor's view in this case that tipping has no place in the administration and operation of a governmental agency, this does not transform the practice into a mail fraud violation, nor does it give the prosecutors a license to inject themselves into local affairs to attempt to rectify the problem. To permit the Government to do so in this case would effect a further extension of § 1341 so as to cover all actions which might offend the Government's sense of personal propriety. This we refuse to do, particularly since our acceptance of the Government's theory in this case would have far-reaching ramifications as to the reach of the already pervasive mail fraud statute. The Government here is attempting to criminalize cupidity and we do not believe that § 1341 can be extended to that extreme without a showing of additional facts which clearly bring the conduct within § 1341. Section 1341 is a penal statute with limitations as to its scope, which limitations were grossly exceeded in the present case.[13] Although § 1341 may reach those activities which contravene public policy, *Badders v. United States,* 240 U.S. 391, 393, 36 S.Ct. 367, 60 L.Ed. 706 (1916), or violate contemporary standards of morality and fundamental honesty, *Blachly v. United States,* 380 F.2d 665, 671 (5th Cir. 1967), there must be, at a minimum, a cognizable scheme to defraud. While we do not place our imprimatur upon McNeive's avariciousness, we fail to find from the Government's proof that McNeive engaged in a scheme to defraud the City of St. Louis of any tangible or intangible right so as to fall within the broad reaches of the mail fraud statute. Therefore, we reverse and remand the case

---

**13.** Why the Government would reach out to prosecute this type of case in federal court is an enigma. In oral argument before this court, counsel for the Government informed us that McNeive's case had been discussed with state officials but the Government had requested to prosecute this matter in a federal forum pursuant to § 1341. Counsel for McNeive informed

us that there was nothing to impede a state prosecution of this matter. While we do not wish to impinge upon the sanctity of prosecutorial discretion, it seems that the Government's vast prosecutorial and investigative resources would be far better occupied if petty cases such as these were left to the province of state legal, or even political, processes.

to the District Court with directions to enter an order of acquittal. *United States v. Koonce,* 485 F.2d 374, 381–82 (8th Cir. 1973).

Judgment reversed.