500 F.Supp. 515 (1980)
UNITED STATES of America, Plaintiff,
v.
Rudolph SEDOVIC, Defendant.
No. 80-63CR(4).
United States District Court, E. D. Missouri, E. D.
October 6, 1980.
*516 Stephen B. Higgins, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
Arthur S. Margulis, Clayton, Mo., for defendant.

MEMORANDUM OF DECISION
HUNGATE, District Judge.
This matter is before the Court upon defendant's request for special findings of fact, pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure, following a nonjury trial completed September 8, 1980. The defendant, Rudolph Sedovic, was tried on an indictment alleging six counts of mail fraud in violation of 18 U.S.C. § 1341.
Having fully considered the pleadings, testimony and demeanor of the witnesses and documents produced at trial, and stipulations of the parties, and their proposed findings of fact and conclusions of law, and otherwise being fully advised in the premises, defendant's motion for acquittal at the close of the case is denied. The Court finds the defendant, Rudolph Sedovic, guilty as charged in Count I, Count II, and Count IV of the indictment. The Court finds the defendant not guilty as charged in Count III and Count V of the indictment. Count VI was dismissed on the government's motion.
The indictment charged that the defendant and certain unindicted businessmen used the mails to further a scheme to defraud the City of St. Louis and its agencies by preparing and filing fraudulent merchants' and manufacturers' ad valorem ("M & M") tax returns.
Specifically, defendant was charged with failure to report (1) that he had provided assistance to businessmen in preparing their M & M tax returns; (2) that he had received compensation for providing such assistance; and (3) that some of the businesses which he had assisted were substantially under-reporting the value of their taxable inventory and sales.
The Court hereby makes and enters the following Findings of Fact and Conclusions of Law.

Findings of Fact
1. To apply for a license to engage in business in the City of St. Louis, a merchant or manufacturer must file an ad valorem tax return with the Office of the License Collector of the City of St. Louis, reporting amounts of inventory and sales.
2. The taxpayer's return is reviewed by the Central Business Index ("CBI") division of the Comptroller's office. The CBI compares figures reported by the taxpayer with earnings tax returns and with merchants' and manufacturers' returns from previous years to determine the probable accuracy of the current year's return. After evaluating the return, the CBI files a recommendation to the Board of Merchants and Manufacturers Tax Equalization ("Board"), which either (a) accepts the figures as filed; (b) increases the assessment; (c) seeks additional information directly from the taxpayer; or (d) requests an audit by the license collector's office.
3. Audits conducted by the license collector's office at the request of the Board are relied upon by both the Board and the CBI in determining whether to accept amounts reported on the M & M tax return. Other than calling the taxpayer before the Board, or a "Board visit" to the taxpayer's place of business,[1] the audits are the sole method for determining the tax base. After the Board makes a final determination of the value of the tax base, the taxpayer's return is sent to the license collector's office which computes the amount of tax owed and bills the taxpayer accordingly. A business license is issued when the taxpayer pays the tax bill.
*517 4. The defendant, Rudolph Sedovic, is 54 years old. Although having only an eighth grade education, the defendant was chief auditor in the license collector's office from 1975 until April 16, 1980, the date of the indictment. As chief auditor, the defendant made audit assignments to other auditors in the license collector's office. Most assignments were made according to geographic district, except two auditors were assigned throughout the city.
5. George Kohler was one of the two auditors-at-large, assigned and supervised by the defendant.
6. On occasion, the defendant conducted audits.
7. The 1975 M & M tax return for Atlas Plumbing Supply was jointly prepared by the president of Atlas Plumbing Supply and the defendant.
8. No business records were used to determine what totals should be reported by Atlas Plumbing Supply.
9. The 1975 Atlas Plumbing Supply M & M return substantially under-reported the amount of inventory as well as the amount of sales.
10. Subsequently, the defendant received valuable home furnishings and several hundred dollars in cash from Atlas Plumbing Supply.
11. The Board requested an audit of the 1974 and 1975 Atlas Plumbing Supply M & M tax returns.
12. The audits were assigned to the defendant and George Kohler.
13. On August 2, 1977, Mr. Kohler conducted the audit of Atlas Plumbing Supply and reported a marginal increase in the tax base.
14. On April 19, 1978, the Board accepted Mr. Kohler's audit.
15. The Board was unaware that the defendant had assisted in the preparation of a false return, or that the defendant had received valuable items for providing such assistance.
16. On May 16, 1978, Atlas Plumbing Supply mailed a check to the license collector's office as payment of its under-reported M & M tax for 1975, as charged in Count I of the indictment.
17. The 1975 M & M tax payment by Atlas Plumbing Supply was several thousand dollars less than it would have been had either the tax return or Mr. Kohler's audit been accurate.
18. Following receipt of the payment, Atlas Plumbing Supply was issued a business license for 1975.
19. In 1978, the defendant sent Mr. Kohler to assist Atlas Plumbing Supply in the preparation of the 1978 M & M tax return.
20. Atlas Plumbing Supply's 1978 M & M tax return substantially under-reported the amount of inventory as well as the amount of sales.
21. Atlas Plumbing Supply's 1978 return was filed on June 30, 1978, and approved.
22. The license collector's office computed the tax due based upon the reported totals.
23. The 1978 M & M tax payment by Atlas Plumbing Supply was several thousand dollars less than it would have been had the tax return been accurate.
24. On July 11, 1979, a merchants' and manufacturers' license for Atlas Plumbing Supply, prepared by the license collector's office based on the inaccurate return prepared with the defendant's assistance, was mailed to Atlas Plumbing Supply by the license collector's office, as charged in Count II of the indictment.
25. In 1976, the defendant assisted in the preparation of Milner Metals' 1976 M & M tax return.
26. After reviewing inventory figures from the previous year, the defendant suggested totals for the 1976 return.
27. The amount reported for inventory was substantially less than the correct total.
28. The 1976 M & M tax payment by Milner Metals was substantially less than it would have been had the return been accurate.
*518 29. The defendant received cash from the president of Milner Metals for his assistance.
30. On September 2, 1976, Milner Metals mailed a check in payment of the under-reported 1976 M & M tax as charged in Count IV of the indictment.
31. Neither the CBI nor the Board was advised that the defendant had assisted either Atlas Plumbing Supply or Milner Metals in the preparation of their M & M tax returns during any of the years mentioned above.
32. Neither the CBI nor the Board was aware that the defendant received money or merchandise for providing such assistance.

Conclusions of Law
1. To establish a violation of 18 U.S.C. § 1341, the government must prove beyond a reasonable doubt that the defendant (1) devised or intended to devise a scheme to defraud, and (2) caused the mails to be utilized for the purpose of executing the scheme. United States v. Rabbitt, 583 F.2d 1014, 1022 (8th Cir.), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).
2. The manner in which the defendant provided assistance in the preparation of fraudulent M & M tax returns reflects sufficient planning to satisfy the element of a "scheme" within the meaning of 18 U.S.C. § 1341. See United States v. McNeive, 536 F.2d 1245, 1247 (8th Cir. 1976).
3. The requisite intent to defraud may be inferred by facts and circumstances surrounding a transaction. United States v. Nance, 502 F.2d 615, 618 (8th Cir. 1974), cert. denied, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). State statutes, codes, and ordinances which reflect a standard of conduct are relevant to such an inference. United States v. Rabbitt, supra, at 1029.
4. Mo.Rev.Stat. §§ 150.010, et seq., governing merchants' and manufacturers' licenses and taxes, was in full force and effect during the period charged in the indictment.
5. By aiding businessmen in the fraudulent preparation of merchants' and manufacturers' tax returns, the defendant demonstrated an intent to defraud the city. St. Louis Rev.Code § 696.150, making it a crime to knowingly make a false statement in application for an occupation license regarding annual gross receipts.
6. By accepting gratuities in the course of conduct of his office as chief auditor in the license collector's office, the defendant defrauded the citizens of St. Louis of their right to the honest and faithful service of their public officials. United States v. Brown, 540 F.2d 364, 373 (8th Cir. 1976).
7. Such fraud is actionable where there is, as in this case, a loss to the citizens of the state or municipality. E. g., United States v. Rabbitt, supra at 1025.
8. The defendant's scheme to defraud by facilitating the underpayment of taxes resulted in an actual loss of tax revenue.
9. Independently of the acceptance of gratuities, aiding in the intentional misrepresentation of the value of inventory and sales subject to a tax assessment, for the purpose of, and resulting in the reduction of apparent tax liability, constitutes fraud within the meaning of 18 U.S.C. § 1341.
10. Use of the mails for the purpose of executing the scheme need not be specifically intended. It is sufficient if, as in this case, it is a reasonably foreseeable possibility in furthering the transaction. United States v. Brown, supra at 376.
11. The mailings, dated May 16, 1978; July 11, 1979; and September 2, 1976; were an integral part of the defendant's scheme to defraud since they each represented a critical step in the business licensing process. Without the mailing of a tax payment or the license itself, the objective of securing a business license at an illicitly reduced tax rate, with the defendant's participation, could not have been achieved.
*519 By reason of the foregoing, the Court concludes that the defendant, Rudolph Sedovic, is guilty as charged in Counts I, II, and IV of the indictment.
The Court concludes that the defendant is not guilty as charged in Count III of the indictment due to insufficient proof of the use of the mails. Further, the Court concludes that the facts alleged in Count V of the indictment were not proven beyond a reasonable doubt. The government's primary witness on Count V, testifying under a grant of immunity, admitted lying under oath when testifying before the grand jury. When a witness carries sufficient indicia of guilt to request or require a grant of immunity from the prosecution, it is difficult to see how that grant of immunity enhances his truthfulness. A depraved mind seems at least equally apt to lie and incriminate someone else in order to escape just punishment for its own malfeasance. There may even be a class of people who will say anything you want to hear if you will permit them to escape the consequences of their own wrongdoing. There were insufficient indicia of reliability in this witness's trial testimony to warrant finding the defendant guilty beyond a reasonable doubt.
NOTES
[1] Impracticable, because of volume, in all but a few cases.