## UNITED STATES of America

### v.

### Paul LANIGAN, Gerald Thorpe.

### Crim. No. 81–298.

United States District Court,
E. D. Pennsylvania.

March 18, 1982.

---

Peter F. Vaira, U. S. Atty., Peter J. Smith, Asst. U. S. Atty., Geoffrey L. Beauchamp, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Richard A. Sprague, Philadelphia, Pa., for Paul Lanigan.

Edward H. Rubenstone, Philadelphia, Pa., for Gerald Thorpe.

## MEMORANDUM *

RAYMOND J. BRODERICK, District Judge.

The indictment in this case charged the defendants with causing the mails to be used for the purpose of executing a scheme to defraud in violation of Title 18, Section 1341 of the United States Code. Pursuant to Federal Rule of Criminal Procedure 23(a), the defendants each waived their right to a jury trial.

On March 9 and March 10, 1982, the non-jury trial was held before this Court. The indictment in this case charges defendant Paul Lanigan with five counts of mail fraud in violation of Title 18, Section 1341 of the United States Code and the Court's verdict is that defendant Paul Lanigan is guilty as to Count I, guilty as to Count II, guilty as to Count III, guilty as to Count IV, and guilty as to Count V of the indictment. The indictment in this case also charges defendant Gerald Thorpe with four counts of mail fraud in violation of Title 18, Section 1341 of the United States Code and the Court's verdict as to defendant Gerald Thorpe is guilty on Count I, guilty on Count II, guilty on Count III, and guilty on Count IV.

Although at the close of evidence, neither defendant requested the Court to find the facts specially, in view of the legal issues presented in this case, the Court has nevertheless determined to make specific find-

---

* This opinion is a slightly edited version of the bench opinion delivered by the Court on March 18, 1982, when the Court rendered its verdict of guilty on all five counts as to defendant Paul Lanigan and guilty on all four counts as to defendant Gerald Thorpe. Citations were not read aloud when the verdict was delivered but are included in this written opinion. This edited opinion constitutes the Courts's official opinion in this case.

ings of fact and conclusions of law in support of its verdicts of guilty.

On the basis of the evidence presented at trial, the Court finds that the Government proved the following facts beyond a reasonable doubt:

Defendants Paul Lanigan and Gerald Thorpe were engaged in the operation of a waste and trash dump known as Moyer's Landfill. They each owned 25 percent interest in the Landfill during the years 1974 through July 1979, at which time Thorpe disposed of his interest and terminated his connection with the Landfill. Mr. Lanigan, however, continued to operate the Landfill through 1980. From 1974 through July 1979, both Paul Lanigan and Gerald Thorpe were actively involved in the daily operations of Moyer's Landfill, which was located at Moyer Road, Lower Providence Township, Montgomery County, in the Eastern District of Pennsylvania.

From 1974 until the present, Plymouth Township, Montgomery County, Pennsylvania has been and continues to be a political subdivision of the Commonwealth of Pennsylvania. From January 1976 until November 1981, Wilbur Sibley was an employee of Plymouth Township. He was in charge of the Sanitation Department, and in this position was the Township official who supervised the Township employees who collected waste and trash and it was he who made the determination as to where the Township trucks would dump the waste and trash. Mr. Sibley had absolute discretion to determine which Landfill the Township trucks would use for dumping waste. The dumpsites or Landfills to which the trash was taken submitted bills to Plymouth Township and the amount of bills depended on the volume of trash disposed at the particular Landfill. As the head of the Sanitation Department, Mr. Sibley had the responsibility of checking these bills and submitting them to the Township Council for final approval and payment. The Council of Plymouth Township would approve these bills for payment on the basis of Mr. Sibley's approval and recommendation. At the direction of the Council, checks of the Township were issued in the amount of the approved bills and placed in the United States Mail for delivery to Moyer's Landfill. Defendants Lanigan and Thorpe were well aware that Moyer's Landfill would be paid by these checks sent through the United States Mail. Among the checks which the defendants received from Plymouth Township were:

(a) a check in the amount of $2,400 which was mailed to Moyer's Landfill on or about November 8, 1976;

(b) a check in the amount of $2,910 which was mailed to Moyer's Landfill on or about August 8, 1977;

(c) a check in the amount of $2,820 which was mailed to Moyer's Landfill on or about April 10, 1978;

(d) a check in the amount of $3,103.57 which was mailed to Moyer's Landfill on or about April 9, 1979;

(e) a check in the amount of $3,300 which was mailed to Moyer's Landfill on or about May 14, 1980.

From January 1975 until April 1981, Mr. Sibley directed that the Township's waste be taken either to Moyer's Landfill or the Montgomery County Landfill. During this period, however, the vast majority of the Township's waste went to Moyer's Landfill. Although Moyer's Landfill was farther away from Plymouth Township than was the Montgomery County Landfill, the charge for dumping at Moyer's was less than the dumping charge at Montgomery.

In December 1974 or January 1975, defendants Paul Lanigan and Gerald Thorpe approached Wilbur Sibley for the purpose of soliciting the business of Plymouth Township for Moyer's Landfill. Prior to this time, Moyer's had received some Plymouth Township business but Lanigan and Thorpe sought to acquire for Moyer's a greater share of the Township's waste disposal business. This meeting took place in Mr. Sibley's office at the Plymouth Township Building.

In January 1975, Mr. Sibley sent 34 loads of waste to Moyer's Landfill and on February 3, 1975, the bill for dumping this waste was received by Mr. Sibley in the United

States Mail. The envelope contained only the bill. In February 1975, Mr. Sibley sent 69 loads of waste to Moyer's Landfill and at the end of February or the beginning of March 1975, defendant Gerald Thorpe personally handed Mr. Sibley a sealed envelope which contained the bill for dumping the waste and $100 cash. Mr. Sibley told no one about the cash and he retained the money for approximately two weeks before calling defendant Thorpe and asking him about the cash. Defendant Thorpe told Mr. Sibley that the cash payment was a token of their appreciation for his having sent trash to Moyer's Landfill.

Mr. Sibley continued to send the Township waste to Moyer's during March and April 1975. At or about the end of April or the beginning of May of 1975, defendant Thorpe again hand delivered to Mr. Sibley the bill for April in a sealed envelope, which envelope also contained $200 cash. Mr. Sibley opened the envelope after defendant Thorpe left, and discovered the cash and telephoned Thorpe concerning the $200. Defendant Thorpe told Mr. Sibley that he and defendant Lanigan wanted Plymouth Township as a customer of Moyer's Landfill and that "you, Paul [Lanigan], and me [Thorpe] are the only ones who know" about the cash. Defendant Thorpe also told Sibley that since he had kept the first $100, he should keep the $200 because only "you, Paul and me know about the money". Mr. Sibley continued to send trash to Moyer's Landfill during May and June 1975, but a small amount of Township waste was also sent to the Montgomery County Landfill during this period. In June 1975, defendant Thorpe called Mr. Sibley and said that he and defendant Lanigan wanted the Plymouth Township trash business for Moyer's Landfill and that only Thorpe, Lanigan, and Sibley knew of the cash payments which Sibley had previously received. In July 1975, defendant Thorpe delivered to Mr. Sibley at the Plymouth Township Building a sealed envelope containing a bill from Moyer's Landfill and $200 cash. Mr. Sibley accepted the cash and did not tell anyone about it.

Mr. Sibley continued to send the vast bulk of Plymouth Township's trash to Moyer's Landfill during the remainder of 1975 and through 1980. Trash was sent to Montgomery County Landfill only when weather conditions made it unsafe for the Township trucks to go to Moyer's Landfill. Defendant Thorpe continued to hand deliver the monthly bills of Moyer's Landfill to Sibley at the Plymouth Township Building and, with the exception of every fourth or fifth month, these envelopes contained cash for Mr. Sibley. There was $200 cash in the envelopes during 1975 and most of 1976 and $300 from September 1975 until Sibley stopped receiving payments in 1981. During this period of time, Mr. Sibley received a total sum of between $11,000 and $13,000 in cash payments from defendants Lanigan and Thorpe. Mr. Sibley never told anyone about his receipt of these cash payments.

Defendant Lanigan and defendant Thorpe made these cash payments to Sibley for the purpose of having Mr. Sibley send Plymouth Township's waste to Moyer's Landfill rather than to the Montgomery County Landfill. During the period from 1975 to August 1979, defendants Lanigan and Thorpe not only operated Moyer's Landfill, but they were also part-owners of the Landfill and the receipt of Plymouth Township's trash increased the gross income of Moyer's Landfill. From August 1979, when defendant Thorpe terminated his association with Moyer's Landfill, until January 1981, when the last cash payment was made to Mr. Sibley, defendant Lanigan, who had become a 50 percent owner of the Landfill, increased the gross income of Moyer's Landfill as a result of Mr. Sibley's decision to continue sending trash to Moyer's Landfill. Furthermore, the defendants, Lanigan and Thorpe, were aware that Mr. Sibley was not reporting their clandestine deliveries of cash to anyone, including the officials of Plymouth Township. Defendants Lanigan and Thorpe knowingly and intentionally devised and carried out a scheme to defraud and, for the purpose of executing the scheme, caused the mails to be used.

Mr. Sibley testified at trial that the receipt of the cash from defendants Lanigan and Thorpe did not influence his decisions to send Plymouth Township's trash to Moyer's Landfill. He testified that he did not think that he was cheating anyone because Moyer's charged less for the dumping of the trash than did the Montgomery County Landfill. The defendants contended that, because Moyer's charged less than Montgomery County Landfill, Mr. Sibley's decision to send trash to Moyer's did not defraud the Township. According to Mr. Sibley, if all the Plymouth Township trash had been sent to the Montgomery County Landfill during the period in which he received between $11,000 and $13,000 in cash payments, Plymouth Township would have paid an additional $96,000 for dumping trash. Defendants contend that the cash payments to Mr. Sibley were merely gratuities given to him and that the Township was not defrauded. The defendants therefore contend that they did not engage in a scheme to defraud within the meaning of the federal mail fraud statute.

During the period from January 1975 until November 1981, Wilbur H. Sibley, the head of Plymouth Township's Sanitation Department, was an employee of Plymouth Township and was subject to the laws of the Commonwealth of Pennsylvania and the Home Rule Charter of Plymouth Township. The Home Rule Charter of Plymouth Township provides that, as a township employee, Sibley:

(a) perform the duties of his office with fidelity;

(b) receive compensation for his services as provided by the Township Council, the governing body of Plymouth Township;

(c) was prohibited from accepting anything of value from any person, firm or corporation interested in business dealings with the township;

(d) was prohibited from accepting any gift or other consideration that might tend to influence him in the discharge of his duties; and

(e) was prohibited from accepting any fee or other compensation, other than his salary, for any services performed by him pertaining to his duties as a township employee.

Title 18, Section 4701 of the Pennsylvania Consolidated Statutes prohibits any person from offering, conferring or agreeing to confer any pecuniary benefit to an employee of government for the exercise of discretion as a public servant and from offering, conferring, or agreeing to confer any benefit to an employee of government as consideration for violation of a known legal duty as a public servant.

■ The essential elements of a violation of the mail fraud statute (18 U.S.C. § 1341) are (1) that the defendants devised, or intended to devise, a scheme or artifice to defraud; or for obtaining money or property by means of false or fraudulent pretenses; and (2) that the defendants for the purpose of executing such scheme or artifice or attempting to so do, caused the mails to be used. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1975); *United States v. Tarnopol,* 561 F.2d 466 (3d Cir. 1977). In determining whether defendants Lanigan and Thorpe were guilty of the offenses charged, this Court first considered whether the defendants had devised or intended to devise a scheme to defraud. Upon consideration of the relevant evidence presented at trial, the Court found beyond a reasonable doubt that defendants Lanigan and Thorpe both intended to devise and did devise a scheme and artifice to defraud Plymouth Township of the independent judgment and loyal and faithful services of Wilbur Sibley.

The defendants have contended that their payments to Mr. Sibley were mere gratuities or gifts that did not influence Sibley's decision-making in his capacity as head of the Department of Sanitation for Plymouth Township. However, the Court found, beyond a reasonable doubt, that defendants Lanigan and Thorpe did devise a scheme to defraud. Over a five-year period, Mr. Sibley received from the defendants between $11,000 and $13,000 in regular cash pay-

ments which Sibley and the defendants concealed from the Township. The payments to Sibley were not mere gratuities or gifts but regular cash payments in substantial amounts. As found by the Court, defendant Thorpe, in two telephone conversations with Mr. Sibley, emphasized the secret nature of the cash payments by assuring Mr. Sibley that only the three of them knew about the payments. Mr. Sibley was the Township official with absolute discretion as to which Landfill was used by Plymouth Township. He was prohibited by the Township's Home Rule Charter from accepting anything of value from anyone "interested in business dealings with the township." In addition, the Home Rule Charter prohibited Mr. Sibley from accepting any gift or consideration which might influence him in the performance of his duties and also prohibited him from accepting any compensation in addition to his salary for services performed by him as a Township employee. The defendants by making these cash payments to Sibley had in effect placed Sibley on the payroll of Moyer's Landfill. The evidence in this case sustains beyond a reasonable doubt the conclusion that the actions of defendants Lanigan and Thorpe defrauded the Township of the independent judgment which the Township was entitled to receive from Mr. Sibley.

■ Cases interpreting the federal mail fraud statute have consistently held that a scheme to defraud within the meaning of the statute need not intend to defraud the victim of tangible property interests. An intent to defraud the victim out of intangible interests is sufficient to fall within the prohibition of the statute. *United States v. Mandel*, 591 F.2d 1347, 1360–61 (4th Cir. 1979); *United States v. Bryza*, 522 F.2d 414 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. Kelly*, 507 F.Supp. 495, 499–504 (E.D.Pa.1981); *United States v. Proctor & Gamble*, 47 F.Supp. 676, 678 (D.Mass.1942). The Court found beyond a reasonable doubt that defendants Lanigan and Thorpe intended to

so deprive Plymouth Township of Sibley's independent judgment and loyal, faithful, legal, and uncompromised services and that the defendants in fact accomplished this intent. Courts have consistently held that schemes to deprive an employer of the loyal and faithful services of an employee are schemes to defraud within the meaning of the mail fraud statute. *See United States v. Barta*, 635 F.2d 999, 1006 (2d Cir. 1980, *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1980); *United States v. Bohonus*, 628 F.2d 1167 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *United States v. Reece*, 614 F.2d 1259, 1261 (10th Cir. 1980); *United States v. Bush*, 522 F.2d 641, 646 (7th Cir. 1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), *reh. denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811; *United States v. George*, 477 F.2d 508, 512 (7th Cir. 1971), *cert. denied*, 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61 (1973).

Defendants' reliance upon the case of *United States v. McNeive*, 536 F.2d 1245 (8th Cir. 1976) is misplaced. In *McNeive*, the Eighth Circuit reversed the mail fraud conviction of a St. Louis plumbing inspector who had received five dollar checks as "tips" enclosed with otherwise valid applications for plumbing permits from an area plumbing contractor. The Eighth Circuit reversed on the ground that the evidence showed that the defendant who was accepting "$5 tips" was performing a non-discretionary duty and there was no evidence of an intent to defraud, which is an essential element of the mail fraud statute. *McNeive* can be distinguished from this case because, on the basis of the evidence presented at trial, this Court has found beyond a reasonable doubt that defendants Lanigan and Thorpe intentionally engaged in a scheme to defraud Plymouth Township.

Furthermore, the Eighth Circuit in *McNeive* noted that

courts have held that a recreant employee can be prosecuted under § 1341 if he breaches his allegiance to his employer by accepting bribes or kickbacks in the

course of his employment, since such conduct defrauds the employer of his right to the employee's honest and faithful services. *United States v. Bryza*, 522 F.2d 414 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). Similar schemes devised by public officials have been viewed as defrauding state or municipal citizens of the same intangible right. *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

536 F.2d at 1249.

This Court also found beyond a reasonable doubt the payments made by the defendants to Mr. Sibley were payments designed to compromise Sibley's discretion and judgment and to induce Sibley to send all of Plymouth Township's waste to Moyer's Landfill for disposal. As this Court has found beyond a reasonable doubt, defendants Lanigan and Thorpe made these cash payments to Sibley in order to induce him to send more Township business to Moyer's Landfill. The defendants did convey the aforementioned funds to Mr. Sibley on a regular basis and encouraged him to keep the payments secret so that they might compromise his decision-making and induce him to send more business to Moyer's.

The object of this scheme was to obtain more business for Moyer's Landfill. Despite Mr. Sibley's testimony as to the costs and benefits of using Moyer's Landfill in place of Montgomery County Landfill, it cannot be said that Plymouth Township was not harmed by Mr. Sibley's receipt of the money and the Township's use of Moyer's for waste disposal. Even if it is true that Moyer's was the best location for the Township's waste disposal, the Township is entitled to have the undivided loyalty of its public servants. The defendants' scheme successfully deprived the Township of Wilbur Sibley's undivided loyalty. Thus, the Township was defrauded by defendants Lanigan and Thorpe since Lanigan and Thorpe could afford to pay as much as $300 per month to Mr. Sibley for the purpose of making certain that Plymouth Township's

trash was dumped at Moyer's Landfill and no reason was presented as to why the taxpayers of Plymouth Township could not have been charged a lower price for the dumping of trash at Moyer's Landfill. Thus, the taxpayers themselves were defrauded.

The Court having found beyond a reasonable doubt that the defendants made the payments to Sibley to obtain the Township's business, the perception of Mr. Sibley that he was not defrauding his employer does not negate nor affect the fraudulent intent of the defendants. *See United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1123 (1980). Furthermore, a loyal and faithful government employee would not only have reported to his employer the delivery of cash payments to him by Lanigan and Thorpe, but would have also made a bona fide attempt to have Lanigan and Thorpe reduce the dumping charges which Moyer's Landfill assessed Plymouth Township. As the Seventh Circuit observed in *United States v. Bryza*,

Although Bryza argues he obtained the best possible contracts for his employer, [his employer] was entitled to negotiate those purchases with the knowledge of its employee's interest.... The fraud consisted in Bryza's holding himself out to be a loyal employee, acting in [his employer's] best interests, but actually not giving his honest and faithful services, to [his employer's] real detriment.

522 F.2d at 422 (7th Cir. 1975).

Although this Court has made reference to the fact that the conduct of Mr. Sibley violated Plymouth Township's Charter and that the State's bribery statute may have been violated by the conduct of defendants Lanigan and Thorpe, there is nevertheless a scheme to defraud in this case regardless of the Charter and the statute. The Supreme Court has long held that the term "scheme or artifice to defraud" is not limited to activities which violate a state law, local law, or which would have been actionable common law fraud. *See Durland v. United States*, 161 U.S. 306, 313–14, 16 S.Ct. 508,

511, 40 L.Ed. 709 (1896). The Fourth Circuit has stated:

> As a result of the failure to limit the term 'scheme or artifice to defraud' to common law definitions of fraud and false pretenses and schemes prohibited by State law, the mail fraud statute generally has been available to prosecute a scheme involving deception that employs the mails in its execution and is contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play and right dealing.

*United States v. Mandel,* 591 F.2d 1347, 1361 (4th Cir.) *aff'd* per curiam in relevant part, 602 F.2d 653 (1979) (en banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). *See also United States v. Kelly,* 507 F.Supp. 495, 498 (E.D.Pa.1981). Wilbur Sibley's judgment as a faithful public servant of Plymouth Township was corrupted by the secret monthly payments conveyed to him by defendants Lanigan and Thorpe. The defendants' conduct—their scheme—was contrary to public policy and was clearly in conflict with accepted standards of honest and fairdealing.

Defendants Lanigan and Thorpe have also contended that the use of the mails in this case is "too far removed from the scheme alleged" to constitute mail fraud. As heretofore set forth in the Court's findings of fact, after each bill was approved for payment by Mr. Sibley it was submitted to the Township Council for its authorization to pay the bills. Checks in the amounts of the bills were then mailed to Moyer's Landfill. Defendants Lanigan and Thorpe were aware that the Township would pay the bills submitted by Moyer's by sending checks to Moyer's through the United States Mail.

▮ In *United States v. Lebovitz,* 669 F.2d 894 (1982), the Third Circuit recently restated the law concerning the nexus between a scheme to defraud and use of the mails that is required to constitute a violation of 18 U.S.C. § 1341. Said the Third Circuit:

The mail fraud statute prohibits the use of the mails 'for the purpose of executing' a scheme to defraud. Whether a mailing is 'for the purpose of executing a scheme' within the meaning of section 1341 depends upon whether it is 'sufficiently closely related to respondent's scheme to bring his conduct within the statute. The completion of the scheme must depend in some way on the mailings charged. However, '[i]t is not necessary that the scheme contemplate the use of the mails as an essential element.' Rather, it is sufficient if the mailing is 'incident to an essential part of the scheme.'

at 898 (citations and footnotes omitted). Thus, a mailing associated with a scheme to defraud will bring that scheme within the reach of the federal mail statute if the completion of the scheme depends in some way on the mailings charged. *See United States v. Adamo,* 534 F.2d 31, 36 (3d Cir.), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976); *See also United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *United States v. Brown,* 583 F.2d 659 (3d Cir. 1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979); *United States v. Tarnopol,* 561 F.2d 466 (3d Cir. 1977).

▮ In this case, the object of the scheme to defraud Plymouth Township was to obtain money for Moyer's Landfill. The checks mailed to Moyer's Landfill by the Township, the checks involved in Counts I through V of the indictment, were the fruits of their scheme. Because the defendants received the proceeds of their scheme through the mail, the mail furthered their scheme. The defendants' scheme was ongoing and was not completed upon the receipt of any of the five checks named in the indictment. In addition, the mailings served another function in the scheme. The mailings, pursuant to usual Township procedure, reinforced the impression, which the defendants had carefully cultivated, that everything concerning the Township's business with Moyer's was without scheme or artifice to defraud. Thus, the use of the mails in this case helped the defendants conceal the fraud perpetrated upon the

Township. The concealment was so successful that for more than five years the scheme remained undiscovered. Under these circumstances, it must be found that the mailings involved were a part of the scheme to defraud. *See United States v. Brown*, 583 F.2d 659, 664 (3d Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).

The defendants contend that applying the federal mail fraud statute to the facts of this case is an intrusion into an area which should be reserved for local law enforcement. The federal mail fraud statute has consistently been interpreted by the federal courts as prohibiting all schemes to defraud where the use of mail is part of the execution of the scheme, regardless of whether the fraud is a violation of state law or federal law.